IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY, L.P., <br><br> Plaintiff, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., et al., <br><br> Defendants. | Civil Action No. 1:17-cv-01734-RGA |
| SPRINT COMMUNICATIONS COMPANY, L.P., <br><br> Plaintiff, <br><br> v. <br><br> FRONTIER COMMUNICATIONS CORPORATION, <br><br> Defendant. | Civil Action No. 1:18-cv-00536-RGA |

**MEMORANDUM**

Shanti M. Katona, POLSINELLI, Wilmington, DE; Ryan J. Schletzbaum (argued), SHOOK, HARDY & BACON L.L.P., Kansas City, MO; Robert H. Reckers, SHOOK, HARDY & BACON L.L.P., Houston, TX.

Attorneys for Plaintiff.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Luke L. Dauchot, KIRKLAND & ELLIS LLP, Chicago, IL; David Benyacar and Robert J. Katerberg (argued), ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY.

Attorneys for Defendant Charter Communications, Inc.

Philip A. Rovner, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Brian M. Buroker (argued), GIBSON, DUNN & CRUTCHER LLP, Washington, D.C.

Attorneys for Defendant Frontier Communications Corporation.

March 7, 2019


**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before me are Plaintiff's Motions to Strike Defendants' Inequitable Conduct Defenses and Dismiss Their *Walker Process* Claims. (C.A. 17-1734, D.I. 38; C.A. 18-536, D.I. 21). The Parties have fully briefed the issues. (C.A. 17-1734, D.I. 39, 49, 54, 60, 62; C.A. 18-536, D.I. 22, 32, 37). I heard oral argument on January 22, 2019. (C.A. 17-1734, D.I. 95 ("Tr.")). For the reasons set out below, I will deny Plaintiff's Motions as to the inequitable conduct defenses and grant its motion as to the *Walker Process* claims.

## I. BACKGROUND

Plaintiff filed suit against Charter[1] on December 1, 2017. (C.A. 17-1734, D.I. 1). Plaintiff filed an amended complaint on December 15, 2017 which alleges that Charter infringes fifteen patents.[2] (C.A. 17-1734, D.I. 14). In its answer filed on June 19, 2018, Charter asserts inequitable conduct defenses against nine of the patents and raises a *Walker Process* counterclaim.[3] (C.A. 17-1734, D.I. 33).

Plaintiff filed suit against Frontier on April 10, 2018 which alleges that Frontier infringes the same fifteen patents. (C.A. 18-536, D.I. 1). On July 6, 2018, Frontier filed an amended answer which asserts inequitable conduct defenses against the same nine patents as the Charter Defendants and raises a *Walker Process* counterclaim. (C.A. 18-536, D.I. 17).

Plaintiff filed the present motions on July 24, 2018 (C.A. 17-1734, D.I. 38) and July 27, 2018 (C.A. 18-536, D.I. 21). The motions seek to strike Defendants' inequitable conduct

---

[1] I use "Charter" to collectively refer to the defendants in C.A. 17-1734.
[2] All of the asserted patents are expired. (C.A. 17-1734, D.I. 54 at 9)
[3] The patents subject to the Defendants' inequitable conduct defense and *Walker Process* counterclaims are U.S. Patent Nos. 6,463,052, 6,452,932, 6,633,561, 7,286,561, and 7,505,454 (collectively, the "Group 1 Patents"); U.S. Patent Nos. 6,473,429, 6,343,084, and 6,298,064 (collectively, the "Group 2 Patents"); and U.S. Patent No. 7,693,131 ("'131 Patent").

2

affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f) and to dismiss the *Walker Process* counterclaims for failing to state a claim pursuant Rule 12(b)(6).[4] (D.I. 39 at 1).[5]

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant]

---

[4] Plaintiff also sought to sever and stay the *Walker Process* counterclaims. (C.A. 17-1734, D.I. 39 at 1). I resolved this issue during the August 17, 2018 scheduling conference. (*See* C.A. 17-1734, D.I. 50).
[5] Unless otherwise noted, citations to the docket are to C.A. 17-1734.

3

pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Rule 9 adds a heightened pleading standard for allegations of fraud. It states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires a complainant to plead "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller*, 311 F.3d at 217 (internal quotation marks omitted). Rule 9(b) requires a complainant to provide both a "theoretically viable claim" and the factual allegations that make it plausible. *Id.* at 216 (emphasis in original omitted).

*B. Motion to Strike*

Motions to strike are governed by Rule 12(f) which provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Education Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted). "[M]otions to strike are generally and typically used for purposes of striking allegations made in an answer or other pleading." *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007).

Pursuant to Rule 9(b)'s heightened pleading requirement, sufficiently pleading an affirmative defense of inequitable conduct requires identification of the "specific who, what,

4

when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).

## III. ANALYSIS

### A. Inequitable Conduct Defense

Plaintiff argues that the Defendants failed to properly plead inequitable conduct defenses to their alleged infringement of the Group 1 Patents, Group 2 Patents, and the '131 Patent. Plaintiff directs a significant portion of its briefing at factual issues. When considering a motion to strike, however, I am concerned only with the sufficiency of the factual allegations. Considering the Defendants' allegations to be true, I find that Defendants sufficiently plead each of their inequitable conduct defenses.

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the [Patent Office]." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Specifically, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the [information], knew that it was material, and made a deliberate decision to withhold it." *Id.* In exceptional cases, "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is [deemed] material" as a matter of law. *Id.* at 1292. Generally, however, "[m]ateriality is defined by what a reasonable examiner would have considered important in deciding whether to allow a patent application." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008). Materiality is a question of fact. *Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1360 (Fed. Cir. 2008). Thus, "[a]t the pleading stage, the court does not decide the merits of the claim, only whether materiality has been alleged with sufficient particularity." *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, 2015 WL 4477700, at *4 (D. Del. July 22, 2015).

1. Group 1 Patents

Defendants allege that the Group 1 Patents are unenforceable due to inequitable conduct because the Applicant "repeatedly told the [Patent Office] that ATM switches capable of receiving and processing signaling to set up a communications path already existed as of the claimed priority date." (D.I. 33, counterclaims at ¶ 48). According to Defendants, "These representations were false when made." (*Id.* at ¶ 49).

Plaintiff argues that whether an appropriate ATM switch existed in the art is irrelevant and immaterial because "no asserted claims in any Group 1 Patent require an 'ATM switch.'" (D.I. 39 at 10). Accordingly, Plaintiff asserts that the ATM switch disclosure was immaterial. (*Id.* at 9). Defendants respond that Plaintiff's ATM switch argument, essentially a claim construction argument, is factual and inappropriate for resolution at the pleading stage. (D.I. 49 at 8-9). I agree. Plaintiff's position would require that I adopt a claim construction which excludes ATM switches. Apparently, this is a position other courts have taken. (*See id. at* 10-11). They could easily be right. I am not, however, bound by a claim construction adopted in another district court. Moreover, I am in no position at this early stage in litigation to engage in the type of technical analysis required to properly construe a claim. Accordingly, I will not now decide whether an ATM switch is required by the Patents' claims.

Plaintiff further argues that Defendants have failed to particularly plead which of the asserted claims the Patent Office would not have allowed but for the alleged misrepresentation in the specification. (D.I. 39 at 10-11). Specifically, Plaintiff asserts, "Because the use of ATM switches is not required by the patent claims, [Defendant] has not, and is incapable of, pleading any details as to what, how, and why representations regarding ATM switches are 'but for' material to patentability of the Group 1 Patents." (D.I. 54 at 4-5). I disagree. If, as Defendants

6

allege, a particular type of ATM switch was necessary to enable and provide written description for the claimed invention, then, contrary to Plaintiff's position, Defendants have alleged that the misinformation was material to each of the patent claims. That is, Defendants have sufficiently alleged that the Patent Office would have denied the Group 1 Patents for lack of written description and enablement but for the inclusion of the allegedly non-existent ATM switch in the specification.

2. Group 2 Patents

Defendants allege that the Group 2 Patents are unenforceable due to inequitable conduct because, while saying functional ATM switches already existed to secure allowance of the Group 1 Patents, the Applicant "told the PTO that such ATM switches were still under development, and it was specifically because such switches did *not* exist that the invention described by the Group 2 Patents was necessary, novel and non-obvious." (D.I. 33, counterclaims at ¶ 21 (emphasis added)). Plaintiff argues that Applicant's allegedly inconsistent statements do not meet the materiality standard. It states, "The fact that the Group 2 Patents were issued—in spite of Charter's claim that Sprint disclosed no ATM switches existed—illustrates that disclosure regarding ATM switch existence was immaterial to patentability." (D.I. 39 at 12). I agree. The Patent Office had the "truth" before it and issued the Group 2 Patents as complying with 35 U.S.C. § 112. Thus, Defendants have not sufficiently pled that "but for" the misstatement in the Group 1 Patents' specification the Group 2 Patents would not have issued.

Defendants allege that the Group 2 Patents are unenforceable for the additional reason that "Sprint failed to disclose that Sprint spent nearly two-hundred million dollars on its failed ATM telephony project trying to get the technology of the Group 2 Patents to work, but was unsuccessful." (D.I. 33, counterclaims at ¶ 24). Plaintiff argues that the failure of the project is

7

irrelevant because commercialization of the invention is not the standard for enablement. (D.I. 39 at 12-13). Defendants respond that the allegation is not one of failure to commercialize, but inability to make the Group 2 technology work on any scale. (D.I. 49 at 13).

An applicant has a "duty to disclose to the [Patent] Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a). "The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." *Id.* Enablement is an issue material to patentability. *See* 35 U.S.C. § 112. Thus, an applicant is arguably under a duty to amend non-enabled claims or to disclose information obtained after the filing of the patent application which indicates the claimed invention is inoperable. *See generally* Sean B. Seymore, *Patenting Around Failure*, 166 U. Pa. L. Rev. 1139, 1187 (2018) (arguing that "an inventor cannot conceal known failure without breaching a duty of candor and good faith owed to the Patent Office").

Plaintiff's alleged failure to develop a working embodiment of the Group 2 Patents after significant expense and effort, if true, may be material to patentability. A patent examiner may have rejected the patents on non-enablement grounds if provided with such information. Thus, Defendants sufficiently allege that Plaintiff withheld material information from the Patent Office.

### 3. '131 Patent

Defendants allege, "[T]he [Patent Office] would not have granted the '131 Patent had it known that the specification improperly added new matter." (D.I. 33 at ¶ 94). Defendants further allege, "[T]he [Patent Office] would have found that the claims of '131 Patent do not satisfy the written description requirement because they are not supported by the specification of the parent (unmodified) application." (*Id.*). Defendants' allegations stem from changes the Applicant made to the '131 Patent's Summary of the Invention. (D.I. 49 at 6-7). Plaintiff makes

three arguments as to why this affirmative defense is insufficient: (1) the change was encouraged by the Patent Office, (2) the examiner cited other portions of the specification, in addition to the summary of the invention, to support the as-issued claims, and (3) the modification is immaterial because it would merely reclassify the '131 Patent as a continuation in-part. (D.I. 39 at 13-15).

I do not find Plaintiff's arguments persuasive. Its first argument, that the Patent Office encouraged the changes, is flawed. Although the Patent Office encourages amendment of the Summary of the Invention to reflect the claims, it does not encourage a patentee to introduce new matter in this manner. Moreover, Defendants allege that the Applicant did not follow the Patent Office rules, as the Applicant failed to "clearly identify specification modifications so the [Patent Office could] determine whether they constitute[d] new matter." (D.I. 49 at 14). Assuming this allegation is true, Plaintiff cannot reasonably argue that its actions were of the sort encouraged by the Patent Office. Patent examiners, often working under significant time restraints, rely on patentees complying with Patent Office protocols, such as highlighting specification modifications.

Plaintiff's second argument is similarly unpersuasive. The Applicant relied on the allegedly new matter to overcome a claim rejection. (D.I. 14). Plaintiff argues that this citation was immaterial because the Applicant cited additional portions of the specification in overcoming that rejection. (*Id.*). I disagree. Applicant cited the challenged passage to overcome a rejection. Thus, it is reasonable to conclude the examiner relied on that passage in issuing the claims.

Plaintiff's final argument is legally inaccurate. The Applicant may properly have added new material by filing a continuation in-part rather than a continuation. However, Applicant chose to file a continuation and "cannot rely on any alternative filing date for [its] newly added

9

claim . . . ." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1120 (Fed. Cir. 2001). That is, Plaintiff cannot now undo the Applicant's decision and claim a later priority date.

Thus, Defendants sufficiently allege the materiality of alleged misconduct for the inequitable conduct defenses to withstand a motion to strike. Accordingly, I need not address the Parties' arguments regarding whether the alleged misconduct amounts to egregious conduct. (*See* D.I. 39 at 15).

B. Walker Process *Claims*

Defendants allege that Plaintiff's assertion of the Group 1 Patents, Group 2 Patents, and the '131 Patent is a *Walker Process*-type antitrust violation. Under *Walker Process*, "maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action under § 2 of the Sherman Act." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 173 (1965).

> "In order to prevail on a Walker Process claim, the antitrust-plaintiff must show two things: first, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim."

*TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016). The other elements an antitrust-plaintiff must establish to state a monopolization claim are: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall

recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). That Section "does not provide recompense for any injury causally linked to a violation of the antitrust laws, but rather only for *antitrust injury*." *TransWeb, LLC*, 812 F.3d at 1309. Those are "injur[ies] of the type the antitrust laws were intended to prevent and that flow[] from that which makes defendants' acts unlawful," or, put another way, "loss[es] stem[ming] from a competition-*reducing* aspect or effect of the [accused's] behavior." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

Litigation expenses are not an antitrust injury *per se*. In *TransWeb*, the Federal Circuit, applying Third Circuit law, held that litigation expenses *could* be an antitrust injury. *TransWeb, LLC*, 812 F.3d at 1310. The court noted, however, that the Supreme Court has repeatedly found no antitrust injury where an antitrust defendant's actions would not have resulted in reduced competition. *Id.* at 1309. It distinguished those cases by finding that had the *TransWeb* plaintiff succeeded in its infringement lawsuit it would have, in fact, reduced competition. *Id.* at 1310. Thus, I read *TransWeb* to hold that an antitrust injury exists only when competition would be impacted by a verdict for the plaintiff.

Under this standard, Defendants have not alleged an antitrust injury sufficient to support their counterclaims. As Plaintiff points out, "It is well-settled that patentees cannot enjoin infringers or demand royalty payments for infringement occurring after a patent has expired." (D.I. 39 at 17). Thus, even if Plaintiff is successful, there is no chance that Defendants will be barred from participation in the market. In fact, they will be able to continue to practice the claimed technology rent free. Unlike *TransWeb*, Plaintiff's actions, though allegedly unlawful,

11

cannot cause antitrust injury by reducing Defendants' ability to compete.  Therefore, I will dismiss Defendants' *Walker Process* counterclaims.

## IV. CONCLUSION

I will **DENY** Plaintiff's motions as to the inequitable conduct defenses and **GRANT** Plaintiff's motions as to the *Walker Process* counterclaims.