IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1734 (RGA) |
| CHARTER COMMUNICATIONS, INC., et al., | ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendants. | ) ) | |
| | ) | |
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1736 (RGA) |
| MEDIACOM COMMUNICATIONS CORP., | ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendant. | ) ) | |
| | ) | |
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-361 (RGA) |
| WIDEOPENWEST, INC., ET AL., | ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendants. | ) ) | |

|  |  |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 18-362 (RGA) |
| ATLANTIC BROADBAND FINANCE, LLC, et al., | ) ) **REDACTED** ) **PUBLIC VERSION** |
| Defendants. | ) ) ) |
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 18-363 (RGA) |
| GRANDE COMMUNICATIONS NETWORKS, LLC, et al., | ) ) **REDACTED** ) **PUBLIC VERSION** |
| Defendants. | ) ) ) |

**PLAINTIFF SPRINT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR <u>SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT</u>**

OF COUNSEL:

B. Trent Webb
Ryan J. Schletzbaum
Ryan D. Dykal
John D. Garretson
Jordan T. Bergsten
Aaron E. Hankel
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
Thomas M. Patton
Lydia C. Raw
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
Michael W. Gray
Jonathan M. Hernandez
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

Original Filing Date:  June 12, 2020
Redacted Filing Date: June 24, 2020

POLSINELLI PC
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Sprint Communications
Company L.P.*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. LEGAL STANDARD ................................................................................................. 2

III. ARGUMENT .............................................................................................................. 2

    A.  Defendants' Allegations of Inequitable Conduct Do Not Demonstrate But-For Materiality or Egregious Conduct. ................................................................. 2

        1.  Call Control Patents: The ATM Switch Disclosure Was Not Material ............ 2

        2.  Broadband Patents: The ATM Switch Disclosure Was Not Material .............. 3

        3.  Broadband Patents: Sprint's Commercialization of JCS2000 Was Not Material ........................................................................................................ 4

    B.  There Is No Evidence of Specific Intent to Deceive the PTO. ............................. 6

    C.  WoW, Grande, and ABB's Allegations of Inequitable Conduct Do Not Demonstrate But-For Materiality. ...................................................................... 8

    D.  WoW, Grande, and ABB Have No Evidence of Specific Intent to Deceive. ......... 9

IV. CONCLUSION .......................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ART+COM Innovationpool GmbH v. Google Inc.*,
   155 F. Supp. 3d 489 (D. Del. 2016)........................................................................2

*CFMT, Inc. v. Yieldup Int'l Corp.*,
   349 F.3d 1333 (Fed. Cir. 2003)..............................................................................5

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
   No. 16 -CV-6097, 2017 WL 3493799 (N.D. Ill. Aug. 14, 2017) ............................7

*Exergen Corp. v. Kaz USA, Inc.*,
   120 F. Supp. 3d 1 (D. Mass. 2015) ........................................................................7

*Navico Inc. v. Garmin Int'l, Inc.*,
   No. 16-CV-00190-JRG-RSP, 2017 WL 3701189 (E.D. Tex. Aug. 7, 2017) ...........7

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
   No. 04-cv-1689, 2006 WL 2865469 (D.N.J. Oct. 5, 2006), *aff'd*, 520 F.3d
   1358 (Fed. Cir. 2008)............................................................................................5

*Smith & Nephew, Inc. v. Interlace Med., Inc.*,
   955 F. Supp. 2d 69 (D. Mass. 2013) ......................................................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)...................................................................... *passim*

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
   782 F.3d 671 (Fed. Cir. 2015)................................................................................5

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

All Defendants, except Mediacom,[1] have pled an affirmative defense of inequitable conduct.  Sprint is entitled to judgment as a matter of law because Defendants have failed to raise a genuine issue of material fact that would support a trial on any of Defendants' theories of inequitable conduct.[2]

For one group of patents (the "Call Control Patents"), Defendants' inequitable conduct theory is that Sprint misrepresented the supposed existence of "ATM switches" at the time of invention.  Defendants, however, cannot demonstrate that Sprint's statements regarding an "ATM switch" were material to patentability because, under the Court's claim construction, no asserted claim of the Call Control Patents requires an ATM switch.

Defendants' theories for a second group of patents (the "Broadband Patents") are similarly deficient.   For those patents, Defendants posit that Sprint's decision to abandon a commercialization effort gives rise to inequitable conduct.  But Federal Circuit authority is clear that there is no requirement to notify the Patent and Trademark Office ("PTO") of commercialization activities arising years after the patents were filed.

In addition, WoW, Grande, and ABB separately make a half-hearted attempt to assert inequitable conduct based on Sprint's alleged failure to disclose a reference cited by the Japanese Patent Office in its rejection of a Japanese patent application that is related to some of the patents

---

[1] "Defendants" refers to the named defendants in the following actions:  C.A. 17-1734 (Charter), C.A. 18-361 (WoW), C.A. 18-362 (ABB), and C.A. 18-363 (Grande).  Defendant Mediacom Communications Corporation, in C.A. 17-1736, never pleaded a defense based on inequitable conduct.  C.A. 17-1736, D.I. 19, 1st Am. Answer dated Mar. 21, 2018.  Thus, summary judgment of no inequitable conduct should be granted as to Mediacom for this reason alone.

[2] The patents subject to Defendants' inequitable conduct allegations are U.S. Patent Nos. 6,463,052, 6,452,932, 6,633,561, 7,286,561, and 7,505,454 (collectively, the "Call Control Patents") and U.S. Patent Nos. 6,473,429, 6,343,084, and 6,298,064 (collectively, the "Broadband Patents").  C.A. 17-1734, D.I. 33, ¶ 229 (Fourth Affirmative Defense); Ex. 1, Charter Defs.' Resp. to Pl's 3rd Set of Individual Interrogs., No. 25 at 20-36.

asserted here. But they fail to provide any evidence or expert opinion that, but for Sprint's nondisclosure of this reference, the asserted claims of the three patents would not have issued.

Finally, none of the Defendants can establish the specific intent required for inequitable conduct because no jury could find "the single most reasonable inference able to be drawn from the evidence" is that Sprint specifically intended to deceive the PTO. Because Defendants cannot raise any genuine fact issue as to "but for" materiality or specific intent to deceive, summary judgment of no inequitable conduct is warranted.

## II.   LEGAL STANDARD

To prevail on a claim of inequitable conduct, the accused infringer must prove by clear and convincing evidence: (1) that the patentee "acted with the specific intent to deceive the PTO" and (2) but-for materiality. *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1290 (Fed. Cir. 2011); *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 503 (D. Del. 2016). To meet the clear and convincing standard, specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Id*. "Indeed, the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91 (emphasis in original) (internal quotations and citation omitted).

## III.   ARGUMENT

### A.   Defendants' Allegations of Inequitable Conduct Do Not Demonstrate But-For Materiality or Egregious Conduct.

#### 1.   Call Control Patents: The ATM Switch Disclosure Was Not Material

Defendants alleges that the Call Control Patents are unenforceable due to inequitable conduct because "Sprint—through Mr. Ball, Mr. Setter and Mr. Christie—repeatedly told the PTO that ATM switches capable of receiving and processing signaling to set up a communications path

already existed as of the claimed priority date" and "[t]hese representations were false when made." DI. 33, ¶¶ 176-77.[3]

Early on in this case, at the pleadings stage, Sprint moved to strike Defendants' inequitable conduct defenses, and this inequitable conduct theory in particular, by arguing that whether an appropriate ATM switch existed in the art is irrelevant and immaterial because no asserted claims in any Call Control Patent require an ATM switch. D.I. 39 at 9-10. The Court denied this portion of Sprint's motion as premature because the Court had not yet construed the asserted claims and was in "no position at [that] early stage of litigation" to "decide whether an ATM switch is required by the Patents' claims." D.I. 102 at 6.

This case is now in a different procedural posture. The Court *has* construed the claims of the Call Control Patents in a way that does not require an ATM switch. D.I. 304 at 3-4 (requiring "a switch" but not an "ATM switch"). The "switch" in the asserted claims does not even need to be capable of receiving and processing signaling, as this Court expressly held. *Id.* The Court's construction is determinative of materiality: an ATM switch cannot be material if it is not a requirement of the asserted claims. Accordingly, Defendants cannot show but-for materiality for the Call Control Patents.[4]

### 2. Broadband Patents: The ATM Switch Disclosure Was Not Material

Defendants further allege that Sprint fraudulently procured the Broadband Patents by incorporating by reference the Call Control Patents' specification (including the alleged "misrepresentations" about ATM switches) into the Broadband Patents. DI. 33, ¶¶ 194-95. This

---

[3] All Defendants, except Mediacom, have asserted this identical inequitable conduct theory, but for ease of reference, Sprint cites exclusively to documents filed in C.A. 17-1734.

[4] For the same reasons, the alleged misstatement as to the unclaimed ATM switch cannot be considered "egregious." *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 955 F. Supp. 2d 69, 73 (D. Mass. 2013) (finding the alleged "misstatements are not so extreme as to constitute affirmative egregious misconduct") (citing *Therasense*, 649 F.3d at 1292–93).

argument, however, has already been rejected by the Court.  In its Order on Sprint's motions to strike Defendants' inequitable conduct defenses, the Court agreed with Sprint that "the fact that the Broadband Patents were issued — in spite of Defendants' claim that Sprint disclosed no ATM switches existed — illustrates that disclosure regarding ATM switch existence was immaterial to patentability."  D.I. 102 at 7.  Thus, the Court has already ruled on this issue and found that Defendants cannot demonstrate but-for materiality for the Broadband Patents based on Sprint's incorporation by reference of the Call Control Patents' specification.  *Id.*

   3. <u>Broadband Patents: Sprint's Commercialization of JCS2000 Was Not Material</u>

  Defendants further allege that the Broadband Patents are unenforceable for the additional reason that "Sprint failed to disclose that Sprint spent nearly two-hundred million dollars on its failed ATM telephony project trying to get the technology of the Broadband Patents to work, but was unsuccessful" and "thus knew . . . that the invention could not be made without undue experimentation, yet remarkably failed to inform the PTO of that critical fact."  DI. 33, ¶¶ 163-64. Defendants contend that the failure of Sprint's JCS2000 initiative to develop a working embodiment of the Broadband Patents, after significant expense and effort, is material to patentability, and the PTO would have rejected the Broadband Patents on non-enablement grounds if provided with such information. DI. 33, ¶ 210.

  While this inequitable conduct theory survived Sprint's motion to strike, it cannot survive summary judgment.  In its Order denying this portion of Sprint's motion to strike, the Court held that Defendants sufficiently alleged Sprint withheld material information from the PTO because "Plaintiffs' alleged failure to develop a working embodiment of the Broadband Patents after significant expense and effort, *if true*, may be material to patentability."  D.I. 102 at 8 (emphasis added).  This theory fails now because it is *not true* that Sprint failed to develop a working embodiment of the Broadband Patents, and ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████.[5]

With incontrovertible evidence of a working prototype, Defendants resort to wrongly focusing on the alleged failure of the full-scale production model, i.e., the full commercialization of Sprint's JCS2000 project.[6]  "Section 112, paragraph 1, does not require enablement of commercial success[]."  *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, No. 04-cv-1689, 2006 WL 2865469, at *5 (D.N.J. Oct. 5, 2006), *aff'd*, 520 F.3d 1358 (Fed. Cir. 2008). Indeed, "nothing in the patent law requires that a patentee must disclose data on how to mass-produce the invented [process] . . . [, including] the organization and operation of factories." *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003). In fact, efforts undertaken to create a commercial embodiment are not determinative of undue experimentation, let alone enablement.  *See id.*; *see also Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015) (recognizing that a patent disclosure is not required to enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment, so the time it takes to make a

---

[5] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████

[6] Defendants' position is illogical. Defendants' evidence is that Sprint invested a lot of time and money in the JCS2000 initiative to build a full-scale commercial embodiment of the patents.  But no company would spend that kind of time and money unless and until a working prototype was developed.

commercial-grade embodiment is not, itself, determinative of non-enablement).[7]   Because commercial success is not material to enablement, Sprint's alleged failure to commercialize the inventions of the Broadband Patents is not material to patentability.   Defendants cannot demonstrate—*but for* Sprint's non-disclosure of its "failed" attempt to commercialize the inventions— that the Broadband Patents would not have issued.

### B.   There Is No Evidence of Specific Intent to Deceive the PTO.

Defendants also cannot meet their burden of establishing specific intent, and summary judgment of no inequitable conduct is warranted for this reason as well.  To prove specific intent, Defendants must present at least some circumstantial evidence from which specific intent may be inferred.  *Therasense* further requires that the indirect and circumstantial evidence must add up to a singular inference of deceitful intent.  *Therasense*, 649 F.3d at 1290 (deceptive intent must be "the single most reasonable inference to be drawn from the evidence").  And "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  *Id.* at 1290-91.  Defendants' evidence fails in this critical regard.

As discussed, Defendants' allegations rely on purported inconsistent statements about ATM switches in the Call Control and Broadband Patents and the nondisclosure of the "failed" efforts of the JCS2000 initiative. Defendants further contend that these statements or omissions were made with the specific intent, by the inventors and patent attorneys (Messrs. Ball, Setter, and Christie), to deceive the PTO.  Defendants' attacks on Messrs. Ball, Setter, and Christie have no record support, and multiple reasonable inferences may be drawn from the testimony and evidence.

---

[7] Given this authority regarding commercialization efforts, the non-disclosure of JCS2000 can hardly be the basis for a finding of affirmative egregious misconduct.  *See Therasense*, 649 F.3d at 1292-93 ("Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality.").

For example, one could reasonably infer that Messrs. Ball, Setter, and Christie did not deliberately misrepresent the state-of-the-art as to ATM switches or purposefully provide the PTO with conflicting disclosures.  For instance, review of the switch statements relied upon by Defendants reveals that these statements are not actually inconsistent.[8]  And, even if the ATM switch disclosures did conflict, one could reasonably infer that Messrs. Ball, Setter, and Christie believed the disclosure was immaterial because the asserted claims did not require an ATM switch (i.e., why would these individuals be intentionally deceitful as to some unclaimed device?).

Likewise, one could reasonably infer that Messrs. Ball, Setter, and Christie believed Sprint had built a functional prototype of the inventions claimed in the Broadband Patents, ███████ ████████████████████████████  In light of the prototype, the JCS2000 commercialization efforts would not necessarily be material to the examination of the patents-at-issue or the issue of enablement.  In short, Defendants have no evidence to prove that Messrs. Ball, Setter, or Christie believed otherwise or that they made a deliberate decision to withhold information about the JCS2000 project.  The testimony and evidence adduced simply fall short of yielding a single, most reasonable inference of specific intent to deceive the PTO.  *See Therasense*, 649 F.3d at 1290.

Courts have granted summary judgment of no inequitable conduct where the evidence does not support a finding that intent is the single most reasonable inference to be drawn therefrom.[9]  Consistent with this authority, there is simply no basis here on which a jury could find that the

---

[8] ████████████████████████████████████████████████████████████████████████████████████████

[9] *See, e.g., Exergen Corp. v. Kaz USA, Inc.*, 120 F. Supp. 3d 1, 7 (D. Mass. 2015); *Navico Inc. v. Garmin Int'l, Inc.*, No. 16-CV-00190-JRG-RSP, 2017 WL 3701189, at *2 (E.D. Tex. Aug. 7, 2017), report and recommendation adopted, No. 16-CV-00190-JRG-RSP, 2017 WL 3676787 (E.D. Tex. Aug. 25, 2017); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16 -CV-6097, 2017 WL 3493799, at *4, *8 (N.D. Ill. Aug. 14, 2017).

single most reasonable inference from the undisputed facts surrounding Sprint's ATM switch disclosure to the PTO and the nondisclosure of the failed JCS2000 initiative is an intent to deceive the PTO, even viewed in the light most favorable to Defendants. Thus, as a matter of law, Defendants cannot show a "specific intent" to deceive, and Sprint's motion should be granted.

> ### C.   WoW, Grande, and ABB's Allegations of Inequitable Conduct Do Not Demonstrate But-For Materiality.

WoW, Grande, and ABB advance additional allegations of inequitable conduct in their interrogatory responses. Ex. 7, WoW Defs.' Resp. to Pl's 4th Set of Individual Interrogs., No. 25 at 17-20; Ex. 8, Grande Defs.' Resp. to Pl's 3rd Set of Individual Interrogs., No. 24 at 16-19; Ex. 9, ABB Defs.' Resp. to Pl's 3rd Set of Individual Interrogs., No. 25 at 17-19. The patents subject to those allegations are U.S. Patent Nos. 6,463,052, 6,452,932, and 6,633,561. *Id.*



WoW, Grande, and ABB appear, however, to have abandoned this inequitable conduct theory because they did not have an expert opine on the materiality of the Tsuboi reference. WoW, Grande, and ABB have the obligation under *Therasense* to prove that, had the Tsuboi reference been disclosed to the PTO, the asserted claims of the '3,561 Patent, the '052 Patent, and the '932 Patent would have been disallowed. They have made no such showing. Their expert reports are completely silent on the materiality of the Tsuboi reference, and thus they cannot even attempt to raise a factual dispute as to the materiality of this prior art. In fact, they *cannot* dispute that the Tsuboi reference does not meet the but-for materiality standard because ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████  Their evidence is simply insufficient to avoid summary judgment.

Furthermore, mere omissions—like the non-disclosure of the Tsuboi reference—cannot constitute affirmative egregious misconduct. *See Therasense*, 649 F.3d at 1292–1293 ("Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality."). Therefore, WoW, Grande, and ABB cannot satisfy the *Therasense* standard for materiality.

### D.   WoW, Grande, and ABB Have No Evidence of Specific Intent to Deceive.

Even if genuine issues of material fact remain regarding materiality, because WoW,

Grande, and ABB cannot meet their burden of establishing specific intent, the Court should grant summary judgment of no inequitable conduct with respect to the Tsuboi reference.

WoW, Grande, and ABB have not asserted any specific facts or evidence from which a reasonable factfinder could conclude that Mr. Setter or Mr. Kim had a specific intent to deceive the PTO by not disclosing the Tsuboi reference. *See Therasense*, 649 F .3d at 1290 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."). Tellingly, █████████████

████████████████████████████████████████████

███████████████████████████████████[10]   Therefore, Sprint need not offer anything further to prevail on summary judgment, as the absence of a good-faith explanation for withholding a material reference does not, by itself, prove intent to deceive. *See Therasense*, 649 F.3d at 1290–91.

With insufficient allegations, no factual support, and no expert testimony, WoW, Grande, and ABB have failed to raise a triable issue as to the Tsuboi reference, and the Court should grant Sprint's motion on this ground.

## IV.   <u>CONCLUSION</u>

Sprint requests that the Court grant summary judgment of no inequitable conduct.

---

[10] Ex. 7, WoW Defs.' Resp. to Pl's 4th Set of Individual Interrogs., No. 25 at 17-20; Ex. 8, Grande Defs.' Resp. to Pl's 3rd Set of Individual Interrogs., No. 24 at 16-19; Ex. 9, ABB Defs.' Resp. to Pl's 3rd Set of Individual Interrogs., No. 25 at 17-19.

POLSINELLI PC

OF COUNSEL:

B. Trent Webb
Ryan J. Schletzbaum
Ryan D. Dykal
John D. Garretson
Jordan T. Bergsten
Aaron E. Hankel
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
Thomas M. Patton
Lydia C. Raw
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
Michael W. Gray
Jonathan M. Hernandez
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

June 12, 2020

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Sprint Communications Company L.P.*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 24, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 24, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Kelly E. Farnan<br>RICHARDS, LAYTON & FINGER, PA<br>One Rodney Square<br>Suite 600<br>920 N. King Street<br>Wilmington, DE 19801<br>*Attorneys for Defendants Charter*<br>*Communications, Inc., Charter*<br>*Communications Holdings, LLC, Spectrum*<br>*Management Holding Company, LLC, Charter*<br>*Communications Operating, LLC, and Bright*<br>*House Networks, LLC* | *BY ELECTRONIC MAIL* |
| David S. Benyacar<br>Daniel L. Reisner<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, NY 10019<br>(212) 836-8000<br>*Attorneys for Defendants Charter*<br>*Communications, Inc., Charter*<br>*Communications Holdings, LLC, Spectrum*<br>*Management Holding Company, LLC, Charter*<br>*Communications Operating, LLC, and Bright*<br>*House Networks, LLC* | *BY ELECTRONIC MAIL* |

Robert J. Katerberg                                          *BY ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. N.W.
Washington, D.C. 20001
(202) 942-5000
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Gregory Arovas                                              *BY ELECTRONIC MAIL*
Jeanne M. Heffernan
Ryan Kane
James E. Marina
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Luke L. Dauchot                                            *BY ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Bao Nguyen                                              *BY ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Steven J. Balick (#2114)                                *BY ELECTRONIC MAIL*
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
   *Attorneys for Defendants Mediacom*
   *Communications Corporation, Atlantic*
   *Broadband Finance, LLC, Atlantic Broadband*
   *(CT), LLC, Atlantic Broadband (Delmar),*
   *LLC, Atlantic Broadband (Miami), LLC,*
   *Atlantic Broadband (NH-ME), LLC, Atlantic*
   *Broadband (Penn), LLC, Atlantic Broadband*
   *(SC), LLC, WideOpenWest, Inc.,*
   *WideOpenWest Networks, Inc., WideOpenWest*
   *Finance, LLC, WideOpenWest Georgia, LLC,*
   *Knology of Alabama, Inc., Knology of Florida,*
   *LLC, Knology of Georgia, Inc., Knology of*
   *South Carolina, Inc., Knology of Tennessee,*
   *Inc., Knology of Kansas, Inc., Anne Arundel*
   *Broadband, LLC, Grande Communications*
   *Networks, LLC, RCN Telcom Services, LLC,*
   *WaveDivision Holdings, LLC, and Radiate*
   *Holdings, L.P.*

Robinson Vu                                      *BY ELECTRONIC MAIL*
Natalie Alfaro Gonzales
Lindsay Volpenhein Cutie
Amy E. Bergeron
Charles Stephen Maule
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1234
   *Attorneys for Defendants Mediacom*
   *Communications Corporation, Atlantic*
   *Broadband Finance, LLC, Atlantic Broadband*
   *(CT), LLC, Atlantic Broadband (Delmar),*
   *LLC, Atlantic Broadband (Miami), LLC,*
   *Atlantic Broadband (NH-ME), LLC, Atlantic*
   *Broadband (Penn), LLC, Atlantic Broadband*
   *(SC), LLC, WideOpenWest, Inc.,*
   *WideOpenWest Networks, Inc., WideOpenWest*
   *Finance, LLC, WideOpenWest Georgia, LLC,*
   *Knology of Alabama, Inc., Knology of Florida,*
   *LLC, Knology of Georgia, Inc., Knology of*
   *South Carolina, Inc., Knology of Tennessee,*
   *Inc., Knology of Kansas, Inc., Anne Arundel*
   *Broadband, LLC, Grande Communications*
   *Networks, LLC, RCN Telcom Services, LLC,*
   *WaveDivision Holdings, LLC, and Radiate*
   *Holdings, L.P.*

Timothy S. Durst                                                    *BY ELECTRONIC MAIL*
Baker Botts L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
(214) 953-6500

*Attorneys for Defendants Mediacom Communications Corporation, Atlantic Broadband Finance, LLC, Atlantic Broadband (CT), LLC, Atlantic Broadband (Delmar), LLC, Atlantic Broadband (Miami), LLC, Atlantic Broadband (NH-ME), LLC, Atlantic Broadband (Penn), LLC, Atlantic Broadband (SC), LLC, WideOpenWest, Inc., WideOpenWest Networks, Inc., WideOpenWest Finance, LLC, WideOpenWest Georgia, LLC, Knology of Alabama, Inc., Knology of Florida, LLC, Knology of Georgia, Inc., Knology of South Carolina, Inc., Knology of Tennessee, Inc., Knology of Kansas, Inc., Anne Arundel Broadband, LLC, Grande Communications Networks, LLC, RCN Telcom Services, LLC, WaveDivision Holdings, LLC, and Radiate Holdings, L.P.*

*/s/ Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)

5