IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1734 (RGA) |
| CHARTER COMMUNICATIONS, INC., et al., | ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendants. | **)** ) | |

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1736 (RGA) |
| MEDIACOM COMMUNICATIONS CORP., | ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-361 (RGA) |
| WIDEOPENWEST, INC., ET AL., | ) ) | **REDACTED** **PUBLIC VERSION** |
| Defendants. | ) ) | |

|  |  |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) C.A. No. 18-362 (RGA) <br> ) |
| ATLANTIC BROADBAND FINANCE, LLC, et al., | ) **REDACTED** <br> ) **PUBLIC VERSION** <br> ) |
| Defendants. | ) <br> ) |
| SPRINT COMMUNICATIONS COMPANY L.P., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) C.A. No. 18-363 (RGA) <br> ) |
| GRANDE COMMUNICATIONS NETWORKS, LLC, et al., | ) **REDACTED** <br> ) **PUBLIC VERSION** <br> ) |
| Defendants. | ) <br> ) |

**SPRINT'S BRIEF IN RESPONSE TO DEFENDANTS'**
**<u>MOTION TO STRIKE PORTIONS OF SPRINT'S EXPERT REPORTS</u>**

POLSINELLI PC
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Sprint Communications
Company L.P.*

OF COUNSEL:

B. Trent Webb
Ryan J. Schletzbaum
Ryan D. Dykal
John D. Garretson
Jordan T. Bergsten
Aaron E. Hankel
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
Thomas M. Patton
Lydia C. Raw
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
Michael W. Gray
Jonathan M. Hernandez
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

Original Filing Date:  July 17, 2020
Redacted Filing Date: July 28, 2020

# TABLE OF CONTENTS

Page

I.      INTRODUCTION...................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS ....................................................2

III.    FACTUAL BACKGROUND ....................................................................................2

      A.      Dr. Wicker's Expert Reports .........................................................................2

      B.      Dr. Mangum's Expert Reports ......................................................................4

      C.      Defendants' Evolving Requests .....................................................................5

IV.     LEGAL STANDARDS ............................................................................................8

V.      ARGUMENT .........................................................................................................9

      A.      Dr. Wicker's Expert Disclosure Complies with Rule 26 ................................9

      B.      Dr. Wicker's Expert Disclosure Should Not Be Stricken Under Rule
           37(c)(1) ......................................................................................................11

      C.      Dr. Mangum's Expert Disclosure Complies with Rule 26(a)(3). ..................14

      D.      Dr. Mangum's Expert Disclosure Should Not Be Stricken Under Rule
           37(c)(1) ......................................................................................................18

      E.      Defendants Seek to Strike Matter Having Nothing to Do With Their
           Argument ...................................................................................................19

VI.     CONCLUSION ....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
2011 WL 1897322 (D. Del. May 19, 2011) ......................................................................13, 14

*Alza Corp. v. Andrx Pharm., LLC*,
2008 WL 1886042 (D. Del. Apr. 28, 2008) .............................................................................10

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
749 F. Supp. 2d 210 (D. Del. 2010) ........................................................................................19

*Bridgestone Sports Co., Ltd. v. Acushnet Co.*,
2007 WL 521894 (D. Del. Feb. 15, 2007) .................................................................................8

*Dunkin' Donuts Inc. v. Patel*,
174 F. Supp. 2d 202 (D.N.J. 2001) ..........................................................................................10

*Edmond v. Plainfield Bd. of Educ.*,
2018 WL 4380991 (D.N.J. Sept. 13, 2018) .............................................................................15

*Ely v. Cabot Oil & Gas Corp.*,
2016 WL 4169220 (M.D. Pa. Feb. 17, 2016) ..........................................................................16

*EMC Corp. v. Pure Storage, Inc.*,
154 F. Supp. 3d 81, 92 (D. Del. 2016) ..................................................................................9, 17

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994) ........................................................................................8, 9, 11, 13

*Invista N. Am. S.A.R.L.*,
2013 WL 3216109 (D. Del. June 25, 2013) .............................................................................12

*Leese v. Lockheed Martin Corp.*,
6 F. Supp. 3d 546, 553 (D.N.J. 2014) ......................................................................................16

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d Cir. 1977) ............................................................................................ *passim*

*MobileMedia Ideas, LLC v. Apple Inc.*,
907 F.Supp.2d 570 (D. Del. 2012) ...........................................................................................11

*Muhsin v. Pac. Cycle, Inc.*,
2012 WL 2062396 (D.V.I. June 8, 2012) ................................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    2006 WL 2435083 (D. Del. Aug. 22, 2006) ..............................................................12

*Sheetz v. Wal-Mart Stores, E., L.P.*,
    2017 WL 5625767 (M.D. Pa. Nov. 22, 2017) ..........................................................16

*SodexoMAGIC, LLC v. Drexel Univ.*,
    333 F. Supp. 3d 426, 443–44 (E.D. Pa. 2018) ........................................................19

**Rules**

FED. R. CIV. P. 26 ........................................................................................................... *passim*

FED. R. CIV. P. 37(c)(1) ...................................................................................8, 9, 10, 17

Fed. R. Evid. 703 ....................................................................................................15, 16

## I.      INTRODUCTION

Defendants move to strike over thirty paragraphs of Sprint's expert reports under Rule 26 without even addressing the *Pennypack* factors that govern exclusion in the Third Circuit.  This Court should deny their motion for this reason alone.  But even if Defendants had argued those factors, this Court would not need to reach them.  Sprint's experts properly incorporate discrete sections of past reports that Sprint produced months before fact discovery closed.  And if there was any doubt, Defendants could, and did, ask Dr. Wicker (during his 5-day deposition), and Dr. Mangum (during his 2.5-day deposition), about which prior opinions they were incorporating.

Even worse, Defendants simply ignore Sprint's substantial efforts to provide even more detailed disclosures and requested confirmations, which moot this motion.  When Defendants complained they did not know if Dr. Mangum was incorporating the opinions of other experts, Sprint counsel confirmed (as did Dr. Mangum in his deposition), that he was not doing so. Defendants moved anyway, inaccurately claiming: "Dr. Mangum's Opening Report incorporates testimony from experts who testified in prior cases." D.I. 477 at 3.  When Defendants complained that Dr. Wicker did not point out the precise paragraphs of past reports he was incorporating by reference, Dr. Wicker served an errata doing just that.  Sprint counsel in correspondence proffered similar detailed pin cites for additional errata to satisfy Defendants' concerns.  Defendants never explained what, if anything, was wrong with this detailed proffer, but instead filed this motion.[1]

Because Sprint's expert reports (especially with the additional proffered details) satisfy Sprint's disclosure requirements, and because Defendants do not even try to argue prejudice

---

[1] Rather than engage on what changes would moot the issue, Defendants then demanded that Sprint unilaterally agree, among other things, that Sprint's experts would not use prior testimony to "support the opinions contained in their reports." D.I. 477 at 2 (docket entries refer case 17-1734 unless otherwise noted).  But this vague demand appears to go far beyond what the law requires, which is presumably why Defendants refuse to agree to it themselves.

meriting exclusion under the *Pennypack* factors, the Court should deny Defendants' motion.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

The parties served opening expert reports on March 20, 2020, rebuttal reports on April 24, 2020, and reply reports on May 15, 2020.  Defendants deposed Sprint's technical expert, Dr. Stephen Wicker, for five days between May 28 and June 5, 2020, and deposed Sprint's damages expert, Russell Mangum for 2.5 days, from June 3-5, 2020.  Expert discovery closed on June 5, 2020. Dispositive motions and Daubert motions were filed on June 12, 2020.  Trials are set to begin on October 5, 2020 through November 30, 2020.  D.I. 50 at 14.

## III.     FACTUAL BACKGROUND

### A.     Dr. Wicker's Expert Reports

As Defendants and this Court know, Dr. Wicker has been Sprint's technical expert witness on infringement and validity issues in multiple prior litigations involving the same asserted patents, and, as such, he has provided testimony, opinions, and tutorials regarding these same issues in prior cases.  *See* D.I. 477 at 3-6.  Although Dr. Wicker's expert reports in this litigation contain paragraphs incorporating some of those prior opinions and testimony by reference, these paragraphs contain separate expert opinions that clearly stand on their own and incorporate these prior opinions and testimony as background, or to provide further examples supporting his opinions in this case.  *See* D.I. 478, Exs. 2, 5-8, 10.

For example, Defendants move to strike Paragraph 181, and footnotes 47 and 48 cited within that paragraph, of Dr. Wicker's opening infringement report, in which Dr. Wicker discusses the known interchangeability of IP and ATM by devices ████████████████████████

████   D.I. 478, Ex. 2.  In Paragraph 181 and footnotes 47 and 48, Dr. Wicker refers to his "prior reports" in related cases as providing "more discussion of my DOE opinions and the media

gateways used in the cable industry for VoIP" and as describing further examples of "the known interchangeability and interoperability of IP and ATM in the context of these patents in the industry" beyond ██████████████████████ discussed in his opening report here. D.I. 478, Ex. 2. In incorporating these prior reports by reference to provide these further examples and discussion, Dr. Wicker specifies the reports by date, case name, and the exact page numbers he is incorporating. *Id.* Moreover, Dr. Wicker already changed footnote 47 in his report through an errata to address Defendants' initial complaints about Dr. Wicker's incorporation of documents not available to the parties in this action and to specify the particular paragraphs he incorporates. *Id.*

As another example, Defendants move to strike Paragraphs 4, 43, and 51 of Dr. Wicker's rebuttal report on validity. Paragraph 4 references prior opinions, trial testimony, and trial demonstratives that Dr. Wicker incorporates by reference. D.I. 478, Ex. 5. Defendants' Motion fails to acknowledge that Sprint provided specific pin cites for Paragraph 4 so that there was no question which portions of Dr. Wicker's prior validity reports, trial testimony and trial demonstratives were being incorporated. *See* D.I. 478, Ex. 1, June 2, 2020 Email from Bergsten to Block. Further, as the revised Paragraph 4 points out, these validity opinions are "specif[ied] with particularity" throughout his report. *Id.* Paragraphs 43 and 51 reference, respectively, a "detailed tutorial" and "background information related to the Internet Protocol" that Dr. Wicker provided in his infringement report *in this proceeding* as well as in prior litigations. D.I. 478, Ex. 5. These paragraphs are clearly providing background and are meant to educate, not obfuscate, these issues. Moreover, Defendants fail to acknowledge that Sprint provided specific pin cites for Paragraph 51 so that there was no question what "background information" was being incorporated. *See* D.I. 478, Ex. 1, June 2, 2020 Email from Bergsten to Block.

The other paragraphs at issue in Dr. Wicker's reports similarly incorporate his prior reports and testimony to provide background or further examples of facts and data supporting his opinions. As discussed below, Sprint has attempted to resolve any specificity issues arising from Dr. Wicker's incorporation by reference of his prior reports and testimony— by providing an errata to Dr. Wicker's report, more specific citations to his prior reports, and answers to Defendants' specific questions about what Dr. Wicker will testify to in this case. *See* Section III.C., *infra*.

### B.    Dr. Mangum's Expert Reports

Defendants also move to strike, in their entirety, certain paragraphs of the damages expert reports of Dr. Mangum.  For example, Defendants move to strike paragraphs 234 and 235 of Dr. Mangum's opening report in the case against Charter for improperly incorporating "testimony from experts who testified in prior cases but have not provided reports in this case."  D.I. 476 at 1, D.I. 477 at 3; D.I. 478, Ex. 3 ¶¶ 234-235.  Defendants make this contention without basis in light of (1) Dr. Mangum's deposition testimony that he is not incorporating any prior reports as his own opinions in this case, and (2) Sprint counsel's assurances that "I can confirm that his report is not incorporating by reference prior reports as his own opinions in this case."  Ex. 13, June 4, 2020 Mangum Dep. 263:21-264:25; D.I. 478, Ex. 1, June 15, 2020 Email from Bergsten to Block; D.I. 478, Ex. 1, May 4, 2020 Email from Bergsten to Block.

Moreover, Defendants move to strike paragraphs 234 and 235 despite the fact that (1) these paragraphs address one of the *Georgia Pacific* factors for a reasonable royalty analysis, which is the "opinion testimony of qualified experts"; and (2) Sprint counsel repeatedly pointed this out to Defendants.  D.I. 478, Ex. 3 ¶¶ 234-235; D.I. 478, Ex. 1, June 2, 2020 Email from Bergsten to Block ("As to Dr. Mangum's March 20, 2020 report we have been over this several times as well.

The paragraphs you keep pointing to merely address the *Georgia Pacific* factor about the opinions of other experts and Dr. Mangum discusses the reports of other experts in that context.").

As another example, Defendants move to strike paragraph 146 in Dr. Mangum's May 15, 2020 Reply Report to Charter because he "points to jury findings accepting Dr. Rao and/or Dr. Wicker's opinions about blocking patents and damages."  D.I. 476 at 2; D.I. 477 at 7; D.I. 478, Ex. 9, ¶ 146.  Likewise, Defendants move to strike paragraphs 27 and 179 in Dr. Mangum's May 15, 2020 Reply Report to Charter because Dr. Mangum relies on other experts, including Dr. Wicker's opinion that there are no available, acceptable, non-infringing alternatives to the patents-in-suit.  *See, e.g.*, D.I. 476 at 2; D.I. 478, Ex. 9, ¶¶ 27, 179.  Defendants never explain why these paragraphs are improper given that these are the type of facts or data that experts in his field would reasonably rely on in formulating an opinion on damages.

### C.    Defendants' Evolving Requests

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert to set forth a "complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i) & (ii). Defendants initially did not take issue with either Dr. Wicker's or Dr. Mangum's reports under these subsections of Rule 26, but instead asked Sprint to ensure that any exhibits that will be used to summarize or support Dr. Wicker's opinions were produced to Defendants in compliance with Federal Rule of Civil Procedure 26(a)(2)(B)(iii).  D.I. 478, Ex. 1, April 2, 2020 Email from Block to Bergsten.  Sprint worked to confirm Bates numbers for the materials that were already produced to Defendants or to promptly produce materials to the extent they were not equally available to Defendants. D.I. 478, Ex. 1. When it came to light that Dr. Wicker and Charter's expert Dr. Almeroth both cited to documents referenced in prior reports in prior cases that, by operation of

the protective orders in those cases, were no longer available to Sprint or Defendants, the parties worked together to issue erratas to the reports of Dr. Wicker and Dr. Almeroth to remedy that issue. D.I. 478, Ex. 1, May 11, 2020 Email from Bergsten to Block, attaching Errata for Expert Report of Dr. Stephen Wicker on Infringement.

Finding Sprint willing to amend Dr. Wicker's expert report to avoid raising a dispute with the Court, Defendants expanded their complaints to demand even more overhaul of Dr. Wicker's expert reports and to extend its demands to Dr. Mangum's damages expert reports—requiring either the removal of certain paragraphs from the reports or an agreement that Sprint "will not use prior reports or prior testimony to either: a) add opinions that are not expressly reflected in [their] reports in this case; or b) support the opinions contained in [their] reports in this case." D.I. 478, Ex. 1, May 7, 2020 email from Block to Bergsten; D.I. 478, Ex. 4, May 27, 2020 letter from Block to Bergsten.

Sprint, in good faith, attempted to address Defendants' concerns about specificity in the paragraphs that Dr. Wicker was incorporating by reference from prior reports—by providing correspondence with additional specificity on the specific paragraphs that Dr. Wicker is incorporating by reference from his prior reports and answering various side questions about what Sprint's experts will testify on. *See, e.g.*, *id.* at June 2, 2020 Email from Bergsten to Block. Sprint also pointed out that Defendants' issues with the expert reports had to do with what Dr. Wicker and Dr. Mangum would testify to at trial and that Defendants had the opportunity to ask the experts those questions during their depositions. *Id.* at May 11, 2020 Email from Bergsten to Block ("As in every case, if an expert in these cases discusses past testimony or reports in a way that is unfair in view of the discussion and citations in his or her report in this case, then the parties have tools at their disposal to deal with that."); *id.* at June 10, 2020 Email from Bergsten to Block ("Since

most of the questions you have posed to me have to do with what those two experts would and would not testify to, it seems Defendants had plenty of time to ask that of the experts themselves.").

Indeed, Defendants deposed Dr. Wicker for five days and Dr. Mangum for 2.5 days during the expert discovery period that ended on June 5, 2020.  During Dr. Mangum's deposition, Defendants specifically asked whether he was incorporating prior opinions of other experts and Dr. Mangum testified that he was not:

> Q. You've reviewed prior damages expert reports that were submitted by Sprint in its --in prior VoIP cases, correct?
> A. Correct.
> Q. And those include the deposition of Mr. Sims, Ray Sims?
> A. I believe so, yes.
> Q. And the deposition -- or the report of, I think it's Mr. Mohan Rao or Rao?
> A. Rao. Yes, Rao.
> Q. Okay. Just one question. Are you relying on any of those opinions in the reports -- expressed in the reports that were submitted in -- by Sprint in other cases?
> A. I'm not relying on another damages expert opinion, so to speak, but there's something that I'm referring to that may be in the context of those reports. I list that in my expert report, but unlike Dr. Wicker, who I do rely on, I'm not taking something from Rao or Sims.
> Q. Right. So just to clear that in a way, so when you refer to the reports, it's just that. You're referring to the reports, but you were not adopting any of the opinions offered in any of those other reports, correct?
> A. Yeah, that's correct. I don't use the word "adopt," but I see where you're going, right. I'm not just taking what they're saying and inserting it into my opinion.

Ex. 13, June 4, 2020 Mangum Dep. 263:21-264:25; *see also* D.I. 478, Ex. 1, June 15, 2020 Email from Bergsten to Block (citing this portion of Mangum deposition transcript).  In addition to Dr. Mangum telling Defendants this himself, Sprint counsel also told Defendants multiple times, in emails dated May 4 and June 15, 2020, "I can confirm that his report is not incorporating by reference prior reports as his own opinions in this case."  D.I. 478, Ex. 1, June 15, 2020 Email from Bergsten to Block; D.I. 478, Ex. 1, May 4, 2020 Email from Bergsten to Block.

Unsatisfied, Defendants continued demanding Sprint's agreement that Sprint "will not use prior reports or prior testimony to either: a) add opinions that are not expressly reflected in [their]

7

reports in this case; or b) support the opinions contained in [their] reports in this case." Ex. 1, June 11, 2020 Email from Block to Bergsten. Sprint responded that Defendants' experts have provided expert opinions and testimony in prior related cases and asked that any agreement be reciprocal. D.I. 478, Ex. 1, June 17, 2020 Email from Bergsten to Block, June 15, 2020 Email from Bergsten to Block. Defendants would not agree to discuss reciprocal requirements. D.I. 478, Ex. 1, June 18, 2020 Email from Bergeron to Bergsten; *id.* at June 16, 2020 Email from Block to Bergsten.

When it became clear that Defendants were not really seeking to clarify Sprint's expert reports, but instead to reach a particular side agreement unilaterally limiting the scope of Sprint's, but not Defendants', reports, Sprint refused to bend anymore, and this Motion followed.

## IV.    LEGAL STANDARDS

The Federal Rules of Civil Procedure require a testifying expert to prepare and sign a written report containing, *inter alia,* "a complete statement of all opinions the witness will express and the basis and reasons for them," including "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i) & (ii). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

To determine whether a failure to disclose was harmless, courts in the Third Circuit consider the *Pennypack* factors: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on*

*other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).  The Third Circuit has cautioned, however, that exclusion of "critical evidence," such as an expert report, "is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence" and not when occasioned by only "slight prejudice" to the movant.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted); *see also Bridgestone Sports Co., Ltd. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (noting that while the decision to exclude expert testimony is context-specific, "evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered").  The determination of whether to exclude evidence is committed to the discretion of the Court. *See In re Paoli*, 35 F.3d at 749.[2]

## V.    ARGUMENT

### A.    Dr. Wicker's Expert Disclosure Complies with Rule 26.

Defendants move the Court to strike certain paragraphs from Dr. Wicker's expert reports for one purported reason:  to avoid unfair surprise at trial.  D.I. 477 at 8-9.  While it is true the purpose of the disclosure requirements of Rule 26 "is to prevent a party from being unfairly surprised by the presentation of new evidence," *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016), there is no unfair surprise here.

---

[2] Notably, Defendants never address the legal standards for a motion to strike portions of an expert report, citing only the legal standard for compliance with Federal Rule of Civil Procedure 26(a)(2)(B).  D.I. 477 at 8. In fact, Defendants do not even address the legal standards for exclusion under Federal Rule of Civil Procedure 37(c)(1), let alone discussion of the *Pennypack* factors.

Defendants incorrectly suggest that "Dr. Wicker's reports incorporate almost everything that he has ever said on the Sprint patents spanning a decade" and that he "provides no explanation as to what portions of his prior opinions he expects to offer at trial."  D.I. 477 at 8.  To the contrary, Dr. Wicker has incorporated certain prior opinions and testimony, to the extent relevant to this case, as background or to provide further examples supporting his opinions in this case, and, in many instances, either Dr. Wicker or Sprint has specified the prior reports and testimony by date, case name, and the exact page numbers or paragraphs he is incorporating.  *See* D.I. 478, Exs. 2, 5-8, 10; D.I. 478, Ex. 1, June 2, 2020 Email from Bergsten to Block.

Defendants further suggest that Dr. Wicker does not explain "how any opinions relating to prior art not asserted here and architectures not accused in this case relate to his present opinions." D.I. 477 at 8.  But a review of the reports, even just the portions attached to Defendants' Motion (in D.I. 478), makes clear that Dr. Wicker does not intend to offer opinions from those prior cases unless they are relevant to issues in this case.  For example, Dr. Wicker may offer opinions about unasserted prior art to show the background of the technology at issue and may offer opinions about non-accused architectures to show how they infringe Sprint's patents and are not available, acceptable, non-infringing alternatives.   Sprint has explained this to Defendants in written discovery, deposition discovery, and expert discovery, and Defendants recently deposed Dr. Wicker for five days regarding all of his opinions.  Defendants here, unlike the cases they cite, have not experienced unfair surprise or incurable prejudice as a consequence of Dr. Wicker's incorporation by reference of his prior reports.  *See Alza Corp. v. Andrx Pharm., LLC*, 2008 WL 1886042, at *2 (D. Del. Apr. 28, 2008) (excluding expert's trial testimony because the testimony concerned a subject that was not included in his expert report or deposition); *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 213 (D.N.J. 2001) (excluding the alleged expert's "Certification"

and "Memorandum" because they failed to comply with nearly every provision of Rule 26(a)(2)(B) governing expert disclosure and with Rule 702 governing admissibility of expert testimony).

Thus, contrary to Defendants' baseless contentions, Dr. Wicker's reports satisfy Fed. R. Civ. P. 26(a)(2)(B)'s requirements of a "complete statement of all opinions the witness will express and the basis and reasons for them."

### B.   Dr. Wicker's Expert Disclosure Should Not Be Stricken Under Rule 37(c)(1)

Even if Sprint committed some Rule 26 violation (it has not), the Court should nonetheless find it inappropriate to exclude the portions of the Wicker expert reports at issue. Here, the *Pennypack* factors all weigh against striking these portions of the expert reports.

As to the first "surprise or prejudice" factor, Defendants cannot have been blindsided by the reports' references to prior cases.  For instance, Sprint discussed its prior litigations in detail in Sprint's original Complaint in each of these cases,[3] and Sprint produced its expert reports from those prior litigations, which Dr. Wicker now references, in September and December of 2019, months before the close of fact discovery in these cases.  *See* Declaration of Jordan Bergsten In Support of Sprint's Opposition. Further, as explained above, Dr. Wicker's use of his prior reports was mostly for purposes of background and further examples supporting his opinions.  Defendants, having in their possession Dr. Wicker's reports in past litigations, chose to take many of the same positions that Dr. Wicker responded to in those reports, and cannot claim surprise when Dr. Wicker incorporated sections of his past reports to the extent relevant.

In addition, as pointed out by Sprint counsel during the parties' discussions about the expert reports, Dr. Wicker's validity rebuttal reports had to respond to the extremely vast scope of

---

[3] *See* Case No. 1734, D.I. 1, ¶¶ 19-22; Case No. 1736, D.I. 1, ¶¶ 13-16; Case No. 18-361, D.I. 1, ¶¶ 17-20; Case No. 18-362, D.I. 1, ¶¶ 22-25; Case No. 18-363, D.I. 1, ¶¶ 35-38.

invalidity reports served by Defendants.  D.I. 478, Ex. 1, June 2, 2020 Email from Bergsten to Block ("And of course the issue of responding to your request is complicated by the vast scope of invalidity reports Dr. Wicker had to respond to and the vagueness of your complaint about his reports.").  Defendants were not surprised or prejudiced by this use.

With regard to factors two and three—the ability to cure prejudice and the disruption of the trial schedule—the trials are scheduled for October and November 2020, the Wicker expert reports at issue were served on March 20, April 24, and May 15, 2020, and Defendants took Dr. Wicker's deposition for five days from May 28 to June 5, 2020.  Thus, Defendants have already had the opportunity to cure any prejudice by questioning him about his opinions in this case that incorporate opinions in prior cases, and there should be no disruption to the trial schedule.[4]

As to the fourth, "bad faith" factor, no willful bad faith or flagrant disregard of a court order has been suggested or can be discerned.  To the contrary, Sprint attempted in good faith to try and resolve this dispute—by serving an errata for Dr. Wicker, by providing additional specificity on the specific paragraphs that Dr. Wicker is incorporating by reference from his prior reports, and by answering various questions about what Dr. Wicker will or will not testify to.

---

[4] Courts regularly find prejudice is curable when there is sufficient time for the opposing party to depose an expert, thus militating in favor of allowing the expert's testimony. *See, e.g., Paoli*, 35 F.3d at 792 (finding district court erred in excluding untimely expert submission where the specifics of expert's testimony was provided to defendants four months before trial and 60 days before end of expert discovery, giving defendants "abundant time to depose" the expert before the discovery deadline); *Invista N. Am. S.A.R.L.*, 2013 WL 3216109, at *2 (D. Del. June 25, 2013) (finding even if there was some prejudice from expert's supplemental report, any such prejudice was curable by plaintiff, as the report was served about two weeks before the expert's deposition); *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F.Supp.2d 570, 610 n.22 (D. Del. 2012) (denying motion to strike supplemental report where defendant marked the report as an exhibit at expert's deposition and questioned him about it); *Power Integrations, Inc. v. Fairchild Semicond. Int'l, Inc.*, 2006 WL 2435083, at *1 (D. Del. Aug. 22, 2006) (rejecting a party's claim that it would be prejudiced by a supplemental expert report where the party had almost three weeks to review the report before having the opportunity to depose the expert).

Sprint counsel also explained that "in order to avoid burdening the Court with a dispute, we remain willing to discuss a *mutual* agreement about how experts like Dr. Wicker for Sprint, and Dr. Almeroth, Mr. Gilchrist, and Mr. Bakewell for Defendants," who each has "served hundreds if not thousands of pages of reports in prior cases on some of these same patents—can use their prior reports in this case," but Defendants never responded to that invitation, and instead rushed to the Court with this motion. *See* D.I. 478, Ex. 1, June 17, 2020 Email from Bergsten to Block.

As to the fifth factor, regarding the importance of the evidence, some of the paragraphs Defendants seek to exclude are very important to Sprint's validity and infringement positions and Sprint will not be able to fairly maintain these positions without these paragraphs and supporting evidence. *See, e.g.*, D.I. 478, Ex. 5, ¶ 181 (discussing examples of the interchangeability of IP and ATM, ███████████████████████████████████████████████, and incorporating by reference portions of Dr. Wicker's invalidity rebuttal report in *Cox* where Dr. Wicker cites to additional evidence supporting this known interchangeability);[5] D.I. 478, Ex. 6, ¶ 406 (to rebut allegations that the asserted patents are invalid as obvious, cross-referencing the paragraphs of Dr. Wicker's opening infringement report served in these cases, Dr. Mangum's profitability analysis, discussions with Sprint's disclosed witness Michael Talley, and Dr. Wicker's prior infringement mappings against other cable companies to demonstrate the secondary indicia of commercial success of the asserted patents); D.I. 478, Ex. 7, ¶ 291 (incorporating by reference Dr. Wicker's opinions from prior expert reports regarding the background and deficiencies in numerous alleged prior art references that Defendants' invalidity expert specifically relies upon in these cases to argue Sprint's asserted patents are invalid). And some are important

---

[5] These opinions are necessary to fairly rebut Defendants' arguments that they do not infringe under the doctrine of equivalents and that claim vitiation precludes Sprint's infringement claims.

to the extent they provide a background understanding of how the theories here relate to the prior cases. *See, e.g.*, D.I. 478, Ex. 7, ¶ 482 (discussing the background of TWC litigation and certain judicial opinions on the issue of written description in the context of how they related to identical claims made by Defendants in these cases). Furthermore, "[c]ourts favor the resolution of disputes on their merits[,]" *Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322, at *5 (D. Del. May 19, 2011), and that "is particularly true with respect to the validity of patents." *Id.* (citing *United States v. Glaxo Grp. Ltd.*, 410 U.S. 52, 69 (1973)). On these facts, then, the Court should find that the "extreme sanction" of exclusion is not warranted. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks omitted). Therefore, Defendants' Motion to Strike portions of Dr. Wicker's expert reports should be denied.

### C.     Dr. Mangum's Expert Disclosure Complies with Rule 26(a)(3).

Defendants move the Court to strike certain paragraphs from Dr. Mangum's expert reports because they "purport to rely on or reference opinions from various experts in prior cases who are not subject to cross-examination in this case." D.I. 477 at 9-11. Defendants appear to claim unfair surprise, *id.* at 9, and prejudice from a denial of a meaningful opportunity for cross-examination "[t]o the extent that Dr. Mangum intends to repeat opinions from people who have not been disclosed as experts in this case." *Id.* at 10. Defendants have suffered neither surprise nor prejudice.

First, Defendants complain that Dr. Mangum's "unbounded statements"—that he has "seen prior expert reports from prior tracks of litigation," and that he "considered" the expert report of one of those experts in relation to Sprint's actions against Time Warner Cable, Comcast, Cox, and Cable One—"provide no notice to Defendants as to what opinions from those reports Dr. Mangum will testify about." D.I. 477 at 7, 9 (citing D.I. 478, Ex. 3 ¶¶ 234, 235; D.I. 478, Ex. 1 ¶¶ 238-239, n.452). This complaint is baseless. Contrary to Defendants' statement that "Sprint refuses to

clarify what he meant by referencing these prior reports," *id.* at 7, Sprint has explained to Defendants that Dr. Mangum was merely addressing one of the *Georgia Pacific* factors, which is the "opinion testimony of qualified experts." D.I. 478, Ex. 1, June 2, 2020 Email from Bergsten to Block ("The paragraphs you keep pointing to merely address the *Georgia Pacific* factor about the opinions of other experts and Dr. Mangum discusses the reports of other experts in that context."). Defendants cannot be surprised by a damages expert reciting the *Georgia Pacific* factors for his reasonable royalty opinion. Further, Defendants deposed Dr. Mangum for 2.5 days on June 3-5, 2020, and had the opportunity to question him about "what opinions from those reports" he will testify about. There simply is no unfair surprise or incurable prejudice here.

Second, Defendants' questioning of Dr. Mangum at his deposition should have quelled their concerns that he was attempting "wholesale use of opinions" by other experts who are not subject to cross-examination. D.I. 477 at 6-7. As detailed above, Dr. Mangum testified that he was not taking their opinions and inserting them as his own. Ex. 13, June 4, 2020 Mangum Dep. 263:21-264:25; *see also* D.I. 478, Ex. 1, June 15, 2020 Email from Bergsten to Block (citing this portion of Mangum Dep.). Furthermore, as Defendants acknowledge, Sprint has repeatedly told Defendants that Dr. Mangum's report is not incorporating by reference prior reports as his own opinions in this case. D.I. 477 at 10 (citing D.I. 478, Ex. 1). Thus, there is no prejudice to Defendants from not being able to depose these other experts referenced in Dr. Mangum's report.

Additionally, Defendants complain that Dr. Mangum "points to jury findings accepting Dr. Rao and/or Dr. Wicker's opinions about blocking patents and damages" but "never explains how a prior verdict or testimony from another expert constitute data that he can rely upon as an expert to form his own opinion." D.I. 477 at 7-8 (citing D.I. 478, Ex. 9 ¶ 146; D.I. 478, Ex. 12 ¶ 105, n.168). Defendants, however, never flesh out this statement in their argument. To the extent

Defendants are contending that the testimony does not constitute admissible evidence under the Federal Rules of Evidence, this is an improper attempt to expand the page limits for summary judgment, *Daubert*, and *limine* briefing, and should be denied on that basis.

In any event, that argument fails because Federal Rule of Evidence 703 allows an expert to rely upon another expert to form an opinion so long as the expert is not merely reciting another expert's opinion as his own. *See Edmond v. Plainfield Bd. of Educ.*, 2018 WL 4380991, at *5–*6 (D.N.J. Sept. 13, 2018) ("[I]t is well settled that one expert may rely upon another expert's opinion in formulating his own" but "may not parrot or act as a mouthpiece for other experts' opinions, without independent verification of those opinions.") (citations omitted).   Defendants even acknowledge this in their Motion—stating "while an expert may rely upon another expert to form an opinion under Rule 703, an expert may not merely recite another expert's opinion as his own." D.I. 477 at 10 (citing *Muhsin v. Pac. Cycle, Inc*., 2012 WL 2062396, at *5 n.2 (D.V.I. June 8, 2012)).  As Dr. Mangum testified at deposition, he is not merely reciting another expert's opinion as his own.  Ex. 13, June 4, 2020 Mangum Dep. 263:21-264:25.  Nor do Defendants appear to affirmatively contend he is acting as a mouthpiece for other experts.  D.I. 477 at 10 (arguing only "[t]o the extent that Dr. Mangum intends to repeat opinions from people who have not been disclosed as experts in this case").

This fact distinguishes this case from each of the cases cited by Defendants, wherein the Court found that the opinions were inadmissible under Federal Rule of Evidence 703.  *Muhsin v. Pac. Cycle, Inc.*, 2012 WL 2062396, at *5-*8 (D.V.I. June 8, 2012) (expert's opinions were inadmissible where he adopted the conclusion of a non-testifying expert and admitted he did not do any testing himself and lacked expertise in the area); *Ely v. Cabot Oil & Gas Corp*., 2016 WL 4169220, at *6 (M.D. Pa. Feb. 17, 2016) ("Although an expert witness may in some instances

testify about hearsay evidence or opinions that the expert relied upon in reaching his own expert opinions, Fed. R. Evid. 703, that is not the case here, where Mr. Rubin has admitted that he has no qualification in this area."); *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (acknowledging that, pursuant to F.R.E. 703, "experts may rely on facts or data that an expert 'in the particular field would reasonably rely' upon, even if the underlying facts are inadmissible" but excluding the opinion there as unreliable because it relied on opinions that were "not of a type reasonably relied upon by experts in McHale's field in forming their opinions"); *Sheetz v. Wal-Mart Stores, E., L.P.*, 2017 WL 5625767, at *3, *5 (M.D. Pa. Nov. 22, 2017) (acknowledging "it is beyond cavil" that an expert may, pursuant to Fed. R. Evid. 703 "tether his ultimate conclusions to facts or data that would be reasonably relied on by experts in his particular field, regardless of the admissibility of the facts or data relied upon," but finding that the proffered bases for the expert's testimony were not "the type of facts or data that experts in his field would reasonably rely on in formulating an opinion" and that he "parroted the findings and opinions" of an expert in another case because he had no background in that area and was unqualified).  Unlike these cases, Dr. Mangum is not merely adopting the conclusions of a non-testifying expert and parroting them.

Further, Dr. Mangum is unquestionably qualified to opine on damages and the findings of the other experts that form the bases for his damages opinions, as these are the type of facts or data that experts in his field would reasonably rely on in formulating an opinion.  For example, Dr. Mangum states in his expert report that he relies on Dr. Wicker's opinion that there are no available, acceptable, non-infringing alternatives to the patents-in-suit.  *See, e.g.*, D.I. 478, Ex. 9, ¶¶ 27, 179.  In *EMC Corp. v. Pure Storage, Inc.*, like here, the plaintiff moved to strike the defendant's damages expert's opinions and testimony regarding non-infringing alternatives "because they lack adequate foundations and therefore will fail to assist the trier of fact and because

she failed to adequately disclose the bases for her opinions." 154 F. Supp. 3d at 114-15. The damages expert relied on various sources, including the defendant's technical expert, in support of her opinions on noninfringing alternatives. *Id*. at 115. The court stated that "[i]t is perfectly reasonable for a finance and damages expert to adopt the conclusions of other experts" and held that "[h]er reliance on the opinions of other experts is not a ground for exclusion." *Id*. As in *EMC*, Dr. Mangum's reliance on the opinions of Dr. Wicker and other experts is "perfectly reasonable" and not a ground for exclusion. To the extent Defendants want to challenge the soundness of those conclusions at trial, they can do so through cross examination and other expert testimony. *Id.*

### D.    Dr. Mangum's Expert Disclosure Should Not Be Stricken Under Rule 37(c)(1)

Turning more explicitly to the *Pennypack* factors, excluding these paragraphs in Dr. Mangum's expert reports is not warranted. As discussed above, the first factor of "surprise or prejudice" weighs against exclusion because Dr. Mangum's reports put Defendants on adequate notice of his theories and do not unfairly surprise or meaningfully prejudice Defendants. With regard to factors two and three—the ability to cure prejudice and the disruption of the trial schedule—the trials are scheduled for October and November 2020, the Mangum expert reports at issue were served on March 20 and May 15, 2020, and Defendants took Dr. Mangum's deposition for 2.5 days from June 3 to June 5, 2020. Thus, Defendants have already had the opportunity to cure any prejudice by questioning him about his opinions in this case and whether he incorporates any other expert's opinion. His reports will not disrupt trial or the remainder of the schedule.

As for the fourth and fifth factors, Defendants have not shown these portions of Dr. Mangum's reports to be the result of bad faith or willful misconduct, and they are also important as Sprint relies on these paragraphs of his report to support its damages theories, and would be unfairly prejudiced in maintaining, for example, its argument that there are no noninfringing

alternatives if Defendants' Motion to Strike were granted.  The *Pennypack* factors weigh against the "extreme sanction" of striking the challenged portions of Dr. Mangum's expert reports.

Dr. Mangum's expert reports satisfy Sprint's Rule 26 disclosure obligations, and have not denied Defendants a meaningful opportunity for cross-examination.  Admitting these portions of Dr. Mangum's expert reports will be harmless, and Defendants' Motion to Strike should be denied.

### E.   Defendants Seek to Strike Matter Having Nothing to Do With Their Argument.

Defendants' Motion to Strike is overbroad and overreaching in its request for exclusion of entire paragraphs.  Specifically, Defendants seek to strike freestanding opinions in Dr. Wicker's and Dr. Mangum's expert reports that are unrelated to Sprint's alleged discovery violation in incorporating improper prior opinions—just because they happen to appear in the same paragraph. As just one example, the very first paragraph that Defendants ask the Court to strike in its entirety is Paragraph 181 of Dr. Wicker's March 20, 2020 Infringement report, as amended through errata on May 11, 2020.  D.I. 476 at 1.  That paragraph reads in its entirety:



Beyond this example, my prior reports in related cases also describe the known interchangeability and interoperability of IP and ATM in the context of these patents in the industry.

D.I. 478, Ex. 2, ¶ 181 (footnotes omitted).  This paragraph provides its own opinion that falls well outside the arguments in Defendants' brief and only mentions prior reports in the last sentence and footnotes.  Thus, even if the Court is persuaded by Defendants' arguments, the broadest possible

relief that could be granted would be striking the last sentence and the footnotes.[6]  Defendants nonetheless seek to strike this paragraph in its entirety, along with other similar paragraphs.

Defendants' tactics should not be countenanced, and the Court should deny Defendants' attempt to unfairly profit from their motion by striking matter that has nothing to do with Sprint's alleged discovery violation. *See B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 223-24 (D. Del. 2010) (agreeing that the relief sought in a motion to strike expert report was "overbroad," and striking only the portions suggested by non-movant); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 443–44 (E.D. Pa. 2018) (holding that, by striking only the words presenting an irreconcilable contradiction, and not the entire declaration as requested by the defendant, "the Court removes only the problematic portion of the declaration, consistent with rulings in other Courts in this Circuit").[7]

## VI.   CONCLUSION

For the foregoing reasons, Sprint respectfully requests that the Court deny Defendants' Motion to Strike portions of Sprint's expert reports.  If the Court is inclined to strike the portions of Sprint's expert reports incorporating by reference prior reports and testimony, the Court should not strike the entire paragraphs, as Defendants' request, but only the portions of the paragraphs the Court deems problematic, consistent with rulings in this Court and other Courts in this Circuit.

---

[6] These footnotes further demonstrate the weakness of Defendants' arguments, as these footnotes point out the specific pages and even paragraphs of long-produced prior reports from Dr. Wicker that Dr. Wicker now incorporates. D.I. 478, Ex. 2, May 11, 2020 Errata for Expert Report of Dr. Stephen Wicker on Infringement at 1.

[7] As another alternative, even if the Court is persuaded by Defendants' arguments, the Court could avoid the extreme sanction of striking expert opinions by allowing these experts to serve supplemental reports that copy, in one place, the paragraphs from prior reports that they previously indicated they intend to rely on here.

POLSINELLI PC

/s/ Stephen J. Kraftschik
Stephen J. Kraftschik (#5623)
Christina B. Vavala (#6135)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
cvavala@polsinelli.com

*Counsel for Plaintiff Sprint Communications
Company L.P.*

OF COUNSEL:

B. Trent Webb
Ryan J. Schletzbaum
Ryan D. Dykal
John D. Garretson
Jordan T. Bergsten
Aaron E. Hankel
Lauren E. Douville
Mark D. Schafer
Maxwell C. McGraw
Samuel J. LaRoque
Thomas M. Patton
Lydia C. Raw
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Robert H. Reckers
Michael W. Gray
Jonathan M. Hernandez
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

July 17, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 28, 2020, upon the following in the manner indicated:

Kelly E. Farnan                                              *BY ELECTRONIC MAIL*
Valerie A. Caras
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
Suite 600
920 N. King Street
Wilmington, DE 19801
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

David S. Benyacar                                            *BY ELECTRONIC MAIL*
Daniel L. Reisner
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Robert J. Katerberg                                    *BY ELECTRONIC MAIL*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. N.W.
Washington, D.C. 20001
(202) 942-5000
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Gregory Arovas                                         *BY ELECTRONIC MAIL*
Jeanne M. Heffernan
Ryan Kane
James E. Marina
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Luke L. Dauchot                                        *BY ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Bao Nguyen                                                    *BY ELECTRONIC MAIL*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400
*Attorneys for Defendants Charter*
*Communications, Inc., Charter*
*Communications Holdings, LLC, Spectrum*
*Management Holding Company, LLC, Charter*
*Communications Operating, LLC, and Bright*
*House Networks, LLC*

Steven J. Balick (#2114)                                     *BY ELECTRONIC MAIL*
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
*Attorneys for Defendants Mediacom*
*Communications Corporation, Atlantic*
*Broadband Finance, LLC, Atlantic Broadband*
*(CT), LLC, Atlantic Broadband (Delmar), LLC,*
*Atlantic Broadband (Miami), LLC, Atlantic*
*Broadband (NH-ME), LLC, Atlantic Broadband*
*(Penn), LLC, Atlantic Broadband (SC), LLC,*
*WideOpenWest, Inc., WideOpenWest Networks,*
*Inc., WideOpenWest Finance, LLC,*
*WideOpenWest Georgia, LLC, Knology of*
*Alabama, Inc., Knology of Florida, LLC,*
*Knology of Georgia, Inc., Knology of South*
*Carolina, Inc., Knology of Tennessee, Inc.,*
*Knology of Kansas, Inc., Anne Arundel*
*Broadband, LLC, Grande Communications*
*Networks, LLC, RCN Telcom Services, LLC and*
*WaveDivision Holdings, LLC*

Robinson Vu                                          *BY ELECTRONIC MAIL*
Natalie Alfaro Gonzales
Lindsay Volpenhein Cutie
Amy E. Bergeron
Charles Stephen Maule
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1234
*Attorneys for Defendants Mediacom*
*Communications Corporation, Atlantic*
*Broadband Finance, LLC, Atlantic Broadband*
*(CT), LLC, Atlantic Broadband (Delmar), LLC,*
*Atlantic Broadband (Miami), LLC, Atlantic*
*Broadband (NH-ME), LLC, Atlantic Broadband*
*(Penn), LLC, Atlantic Broadband (SC), LLC,*
*WideOpenWest, Inc., WideOpenWest Networks,*
*Inc., WideOpenWest Finance, LLC,*
*WideOpenWest Georgia, LLC, Knology of*
*Alabama, Inc., Knology of Florida, LLC,*
*Knology of Georgia, Inc., Knology of South*
*Carolina, Inc., Knology of Tennessee, Inc.,*
*Knology of Kansas, Inc., Anne Arundel*
*Broadband, LLC, Grande Communications*
*Networks, LLC, RCN Telcom Services, LLC and*
*WaveDivision Holdings, LLC*

4

Timothy S. Durst                                                     *BY ELECTRONIC MAIL*
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
(214) 953-6500
*Attorneys for Defendants Mediacom*
*Communications Corporation, Atlantic*
*Broadband Finance, LLC, Atlantic Broadband*
*(CT), LLC, Atlantic Broadband (Delmar), LLC,*
*Atlantic Broadband (Miami), LLC, Atlantic*
*Broadband (NH-ME), LLC, Atlantic Broadband*
*(Penn), LLC, Atlantic Broadband (SC), LLC,*
*WideOpenWest, Inc., WideOpenWest Networks,*
*Inc., WideOpenWest Finance, LLC,*
*WideOpenWest Georgia, LLC, Knology of*
*Alabama, Inc., Knology of Florida, LLC,*
*Knology of Georgia, Inc., Knology of South*
*Carolina, Inc., Knology of Tennessee, Inc.,*
*Knology of Kansas, Inc., Anne Arundel*
*Broadband, LLC, Grande Communications*
*Networks, LLC, RCN Telcom Services, LLC and*
*WaveDivision Holdings, LLC*


*/s/ Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)