IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P.,<br><br>                             Plaintiff;<br><br>          v.<br><br>CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS HOLDINGS, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, BRIGHT HOUSE NETWORKS, LLC,<br><br>                             Defendants. | Civil Action No. 17-1734-RGA |

## MEMORANDUM OPINION

Christina B. Vavala and Stephen J. Kraftschik, POLSINELLI PC, Wilmington, DE; Aaron E. Hankel, B. Trent Webb, John D. Garretson, Jonathan M. Hernandez, Jordan T. Bergsten, Lauren E. Douville, Lydia C. Raw, Mark D. Schafer, Ryan D. Dykal, and Ryan J. Schletzbaum, SHOOK, HARDY & BACON LLP, Kansas City, MO; Michael W. Gray and Robert H. Reckers, SHOOK, HARDY & BACON LLP, Houston, TX, attorneys for Plaintiff Sprint Communications Company LP.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER PA, Wilmington, DE; Alex Henriques, Robert A. Appleby, Ryan Kane, James E. Marina, Gregory Arovas, and Jeanne M. Heffernan, KIRKLAND & ELLIS LLP, New York, NY; Bao T. Nguyen, KIRKLAND & ELLIS LLP, San Francisco, CA; Gregory Polins, KIRKLAND & ELLIS LLP, Chicago, IL; Luke Dauchot, KIRKLAND & ELLIS, LLP, Los Angeles, CA; Daniel L. Reisner, David S. Benyacar, and Michael Block, ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY; Robert J. Katerberg, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC; Thomas T. Carmack, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, CA, attorneys for Defendants Charter Communications, Inc. et al.

March 16, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion to Strike Sprint's Amended Infringement Contentions. (D.I. 403). I have reviewed the parties' briefing. (D.I. 404, 413, 418).

## I. BACKGROUND

Plaintiff Sprint Communications currently asserts claims from nine[1] patents against Defendants Charter Communications, Charter Communications Holdings, Spectrum Management Holding Company, Charter Communications Operating, and Bright House Networks.[2] Plaintiff asserts that Defendants' Voice-over-IP ("VoIP") systems infringe these patents, which can be grouped into the Call Control Patents, the Broadband Patents, and the Enhanced Services Patent. The Call Control Patents are Nos. 6,452,932 ("the '932 Patent"), 6,463,052 ("the '052 Patent"), 6,633,561 ("the '3,561 Patent"), 7,286,561 ("the '6,561 Patent"), and 7,505,454 (the '454 Patent"). The Broadband Patents are Nos. 6,343,084 ("the '084 Patent"), 6,473,429 ("the '429 Patent"), and 6,298,064 ("the '064 Patent"). Patent No 6,697,340 ("the '340 Patent") is the Enhanced Services Patent.

Fact discovery closed on February 7, 2020 and expert discovery closed on May 22, 2020. (D.I. 269). On last day of fact discovery, the parties stipulated to a brief and limited extension. One provision of the extension was, "Responses to all remaining outstanding written discovery, including supplementation of previously served contentions, shall be served on or before

---

[1] Plaintiff asserted claims from eleven patents at the time of the briefing, but has since dismissed all claims of two of them. (*See* D.I. 432 at 2; D.I. 493). The reduction to nine patents has no impact on the analysis.
[2] "Defendants" refers to Charter Communications, Inc., Charter Communications Holdings, LLC, Spectrum Management Holding Company, LLC, Charter Communications Operating, LLC, and Bright House Networks, LLC. Defendants will be referred to as "Charter" or "Defendants," unless otherwise noted.

February 12, 2020." (D.I. 372) (footnote omitted). On February 12, 2020, Plaintiff served its Amended Paragraph 4(c) Disclosures (D.I. 377), which is the basis for this dispute.

## II. LEGAL STANDARD

"Infringement contentions … serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *2 (D. Del. Feb. 14, 2017) (quoting *Motion Games, LLC v. Nintendo Co.*, 2015 WL 1774448, at *2 (E.D. Tex. Apr. 16, 2015)). Infringement contentions are treated as initial disclosures under Federal Rule of Civil Procedure 26(a) and the party alleging infringement is permitted to supplement their contentions. *See* United States District Court for the District of Delaware, *Default Standard for Discovery* § 4; *Intellectual Ventures I*, 2017 WL 658469, at *1. In assessing the propriety of supplementing discovery, the Court focuses on "whether a party has provided adequate notice of its legal contentions and their corresponding evidentiary bases." *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 661 F. Supp. 2d 473, 477 (D. Del. 2009).

Under Federal Rule of Civil Procedure 37(c)(1), "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. PRO. 37(c)(1). Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to disclose was harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld." *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 4346530, at *1 (D. Del. Sept. 12, 2019) (citing

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)). "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719. The determination of whether to exclude evidence is within the discretion of the district court. *Id.*

### III.  ANALYSIS

Defendants move to strike Plaintiff's "switch" infringement theory for four of the Call Control Patents: the '052 Patent, the '3,561 Patent, the '6,561 Patent, and the '454 Patent. (D.I. 404 at 1). Defendants contend that Plaintiff raised, for the first time, a new infringement theory after the close of fact discovery on February 7, 2020. (*Id.* at 4). Defendants argue that Plaintiff's delay in disclosing this infringement theory deprived them of the ability to develop non-infringement defenses during discovery, in particular by precluding them from seeking third-party discovery. (*Id.* at 1). Defendants maintain that while they agreed to conduct certain limited activities after the close of fact discovery, they did not agree to "either party wholesale revising its theories" and that they "expressly reserved the right to raise disputes regarding any improper supplementation." (*Id.* at 4).

Plaintiff argues that its supplementation of its infringement contentions was timely under the Court-approved stipulation. (D.I. 413 at 1). Further, Plaintiff asserts that its amended infringement contentions do not disclose a new theory of infringement, as it was an application of the Court's then-recent claim constructions to Plaintiff's existing infringement contentions. (*Id.*). Plaintiff also argues that even if the Court finds that the "switch" theory is new and untimely, Defendants still are not entitled to the "extreme sanction" of excluding evidence as there was no willful deception or inappropriate conduct from Plaintiff. (*Id.* at 9).

4

Using the infringement contentions for Claims 1 and 23 of the '3,561 Patent as examples, Plaintiff's December 2018 Paragraph 4(c) Disclosures stated:

> Charter Accused Products and Services implement a method of operating a processing system to control a packet communication system for a user communication.
>
> This is supported by at least the following:
>
> - [List of Defendants' products and services]
>
> Charter implements the method of claim 1 wherein the processing system is external to any communication switches.
>
> This is supported by at least the following:
>
> - Components of the Charter processing system (which includes a Call Management Server (CMS), Media Gateway Controller (MGC), Signaling Gateway (SG), and/or Call Agent (CA) or IMS equivalents) are external to any communication switches, including any PSTN switches.
>
> - [List of Defendants' products and services]

(D.I. 405-6, Exh. 6 at 2-3 of 5).

In contrast, Plaintiff's February 2020 Paragraph 4(c) Disclosures state:

> Charter Accused Products and Services implement a method of operating a processing system to control a packet communication system for a user communication.
>
> This is supported by at least the following:
>
> - Pursuant to the Court's Memorandum Opinion of December 20, 2019 regarding claim construction, "packet communication system" means "system wherein packets are routed by network elements, wherein at least one network element is a switch." As will be discussed below, Charter's VoIP network is the claimed 'packet communication system' as it routes packets with network elements, including 'switches' (e.g., customer premise eMTAs [Embedded Multimedia Terminal Adapters], IP routers, media gateways and/or SBCs [Session Border Controllers] that set-up calls and relay voice and/or data information from one connection to another).
>
> - [List of Defendants' products and services]
>
> Charter implements the method of claim 1 wherein the processing system is external to any communication switches.

This is supported by at least the following:

- Components of the Charter processing system (which includes a Call Management Server (CMS), Media Gateway Controller (MGC), Signaling Gateway (SG), and/or Call Agent (CA) or IMS equivalents) are external to any communication switches, including circuit-based PSTN switches.

- Pursuant to the Court's Memorandum Opinion of December 20, 2019 regarding claim construction, "switches" means "device(s) that set up calls and relay voice and/or data information from one connection to another." As discussed above, PSTN switches are the claimed "switches" as those devices are responsible for setting up calls and relaying voice and/or data from the PSTN to Charter's VoIP network.

- [List of Defendants' accused products and services]

(D.I. 405-10, Exh. 10 at 2-3 of 5). The main difference between Plaintiff's two sets of Paragraph 4(c) Disclosures (and the basis for Defendants' argument) is Plaintiff's listing of "switches" and statement that "PSTN [Public Switched Telephone Network] switches are the claimed 'switches.'" (*Compare id.*, Exh. 6 at 2-3, *with id.*, Exh. 10 at 2-3 of 5). Defendants contend that Plaintiff's amendments to its infringement contentions do not meet Plaintiff's discovery obligations, as it is a new disclosure on the last day of the extension for particular fact discovery. (D.I. 418 at 3).

Plaintiff's amended infringement contentions meet its discovery obligations as it was not untimely and was not a new disclosure. First, Plaintiff's Amended Paragraph 4(c) Disclosures were literally within the time allowed. The parties' February 7, 2020 stipulation provides, "Responses to all remaining outstanding written discovery, including supplementation of previously served contentions or discovery responses, shall be served on or before February 12, 2020." (D.I. 372 at 2). On February 12, 2020, Plaintiff served its Amended Infringement Contentions. (D.I. 377). Under the stipulation, the service of Plaintiff's Amended Infringement Contentions was timely. Defendants too relied on the stipulation extending discovery, as they

served their First Amended Invalidity Contentions (D.I. 376) on February 12, 2020, as well as five other documents[3] that were objections and responses to Plaintiff's Requests for Admission or Interrogatories. (D.I. 375).

Defendants also argue that under Federal Circuit precedent, it is not appropriate to disclose evidence on the last day of discovery. (D.I. 418 at 3). While some courts strike discovery where there has been an "eleventh hour disclosure," *see Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008), there has been no "eleventh hour disclosure" here. In *Innogenetics* the Federal Circuit affirmed the district court's exclusion of a prior art reference disclosed on the last day of discovery, when the other party was "stripped of any meaningful opportunity to [counter] the reference." *Id.* at 1375-76.

Here, Plaintiff's initial Paragraph 4(c) Disclosures adequately disclosed the infringement theories upon which it expanded in its Amended Paragraph 4(c) Disclosures using the Court's claim construction. Plaintiff's initial Paragraph 4(c) Disclosures identified components of the accused networks, including SBCs and eMTAs, and described the different components of switches. (D.I. 414-1, Exh. 19 at 5-7, 13-15, 21-23, 28-29, 45 of 68). Defendants were aware that Plaintiff identified components of their accused products and systems, some by brand and some by description, and they would have been able to seek all necessary information pertaining to these components during discovery. Plaintiff's initial Paragraph 4(c) Disclosures provided

---

[3] Defendants served: (1) Charter Defendants' Objections and Responses to Plaintiff's First Set of Requests for Admissions (Nos. 1-106); (2) Charter Defendants' Objections and Responses to Plaintiff's Third Set of Individual Interrogatories to Charter Communications, Inc., et al. (Nos. 16-25); (3) Charter Defendants' Supplemental Objections and Responses to Plaintiff's Second Set of Individual Interrogatories to Charter Communications, Inc., et al. (Nos. 7, 8, and 14); (4) Charter Defendants' Second Supplemental Response to Sprint's First Set of Common Interrogatories (Nos. 9-14); and (5) Charter Defendants' Sixth Supplemental Response to Sprint's First Set of Common Interrogatories (Nos. 1-8). (D.I. 375).

Defendants with sufficient information, giving Defendant a "meaningful opportunity" to discover necessary information about the identified components of Defendants' accused systems and products.

While Plaintiff did not expressly list components which might be "switches" until its Amended Paragraph 4(c) Disclosures, the identification of components and description of switch components provided Defendants with "adequate notice of [Plaintiff's] legal contentions and their corresponding evidentiary bases." *Lab. Skin Care*, 661 F. Supp. 2d at 477.

Even the disclosure of new infringement theories toward the end of discovery does not necessarily require that such theories be stricken. In *Intellectual Ventures I*, the court did not strike an infringement theory (disclosed for the first time two weeks before discovery ended), holding that it was "contained in [the plaintiff's] timely-served infringement contentions." *Id.* at *5. The court further stated that the plaintiff "permissibly relied on the opportunity provided in the scheduling order to finalize infringement contentions after the [c]ourt's claim construction order. *Id.* In this case, the *Markman* opinion issued on December 20, 2019. (D.I. 296). Plaintiff "permissibly relied" on the stipulation that permitted supplementation of discovery until February 12, 2020 "to finalize infringement contentions after the Court's claim construction order." *Intellectual Ventures I*, 2017 WL 658469, at *5.

As Plaintiff's Paragraph 4(c) Disclosures were timely served and Defendants had adequate notice of Plaintiff's infringement contentions and their evidentiary bases, Defendants' motion to strike is denied.[4]

---

[4] Due to the pandemic, there is no currently scheduled trial date, and there is quite a backlog of other trials to resolve. The prejudice to Defendants from the amendment to the infringement contentions is supposed to be that Defendants do not know how the switches work because they are made by its suppliers, such as Arris, Cisco, Motorola, Scientific Atlanta, and Siemens.

IV.     CONCLUSION

Defendants' motion to strike Plaintiff's Amended Infringement Contentions as to the '052 Patent, the '3,561 Patent, the '6,561 Patent, and the '454 Patent (D.I. 403) is denied. A separate order will issue.

---

Accepting this proposition as being put forth in good faith, and that Defendants' experts were unable to get any assistance from Defendants' suppliers when they were writing their expert reports, there is time for Defendants to find out how the accused switches work. Upon application after a meet-and-confer, the Court would consider allowing Defendants focused discovery to find that out.