IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SPRINT COMMUNICATIONS COMPANY
L.P.,

                                        Plaintiff;

              v.

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS
HOLDINGS, LLC, SPECTRUM
MANAGEMENT HOLDING COMPANY,
LLC, CHARTER COMMUNICATIONS
OPERATING, LLC, BRIGHT HOUSE
NETWORKS, LLC,

                                        Defendants.

Civil Action No. 17-1734-RGA

<u>MEMORANDUM OPINION</u>

Christina B. Vavala and Stephen J. Kraftschik, POLSINELLI PC, Wilmington, DE; Aaron E.
Hankel, B. Trent Webb, John D. Garretson, Jonathan M. Hernandez, Jordan T. Bergsten, Lauren
E. Douville, Lydia C. Raw, Mark D. Schafer, Ryan D. Dykal, and Ryan J. Schletzbaum,
SHOOK, HARDY & BACON LLP, Kansas City, MO; Michael W. Gray and Robert H. Reckers,
SHOOK, HARDY & BACON LLP, Houston, TX, attorneys for Plaintiff Sprint Communications
Company LP.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER PA, Wilmington, DE; Alex Henriques,
Robert A. Appleby, Ryan Kane, James E. Marina, Gregory Arovas, and Jeanne M. Heffernan,
KIRKLAND & ELLIS LLP, New York, NY; Bao T. Nguyen, KIRKLAND & ELLIS LLP, San
Francisco, CA; Gregory Polins, KIRKLAND & ELLIS LLP, Chicago, IL; Luke Dauchot,
KIRKLAND & ELLIS, LLP, Los Angeles, CA; Daniel L. Reisner, David S. Benyacar, and
Michael Block, ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY; Robert J.
Katerberg, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC; Thomas T.
Carmack, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, CA, attorneys for
Defendants Charter Communications, Inc. et al.

March 16, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Plaintiff's Motion for Partial Summary Judgment Regarding

Collateral Estoppel and Equitable Defenses. (D.I. 460). Defendants filed a cross motion for

Partial Summary Judgment of No Collateral Estoppel. (D.I. 498). I have reviewed the parties'

briefing. (D.I. 461, 502, 525). I heard oral argument on some issues on November 30, 2020. (D.I.

554).

## I.      BACKGROUND

Plaintiff Sprint Communications currently asserts claims from nine[1] patents against

Defendants Charter Communications, Charter Communications Holdings, Spectrum

Management Holding Company, Charter Communications Operating, and Bright House

Networks. Plaintiff asserts that Defendants' Voice-over-IP ("VoIP") systems infringe these

patents, which can be grouped into the Call Control Patents, the Broadband Patents, and the

Enhanced Services Patent. The Call Control Patents are Nos. 6,452,932 ("the '932 Patent"),

6,463,052 ("the '052 Patent"), 6,633,561 ("the '3,561 Patent"), 7,286,561 ("the '6,561 Patent"),

and 7,505,454 (the '454 Patent"). The Broadband Patents are Nos. 6,343,084 ("the '084 Patent"),

6,473,429 ("the '429 Patent"), and 6,298,064 ("the '064 Patent"). Patent No 6,697,340 ("the '340

Patent") is the Enhanced Services Patent.

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Plaintiff asserted claims from eleven patents at the time of the briefing, but has since dismissed all claims of two of them.  (*See* D.I. 432 at 2; D.I. 493).  The reduction to nine patents has no impact on the analysis.

Civ. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).  A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III.   ANALYSIS

#### A.  Collateral Estoppel

Collateral estoppel, also known as issue preclusion, bars parties from re-litigating matters that they had a full and fair opportunity to litigate. *Montana v. United States*, 440 U.S. 147, 153 (1979). This "protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54.

In a patent case, the law of the regional circuit applies to collateral estoppel generally and Federal Circuit precedent applies where the determination of collateral estoppel involves substantive issues of patent law. *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Thus, Third Circuit law applies here. The Third Circuit analyzes four requirements for the application of collateral estoppel: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citation omitted). The Third Circuit has "also considered whether the party being precluded 'had a full and fair opportunity to litigate the issue in question in the prior action.'" *Id.* (quoting *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d. Cir. 1999)).

Plaintiff's preclusion arguments arise from Defendants' involvement in a prior action between Plaintiff and Time Warner Cable in the United States District Court for the District of Kansas ("the Kansas Action"). *See Sprint Commc'ns Co.  v. Time Warner Cable, Inc.*, 255 F.

Supp. 3d 1134 (D. Kan. 2017), *aff'd*, 760 F. App'x 977 (Fed. Cir. 2019). During the pendency of the suit, Defendants merged with Time Warner Cable. (D.I. 462-1, Exh. G at 235 of 755). In the Kansas Action, the jury found that Time Warner Cable infringed each of the asserted claims in five of Plaintiff's patents and that none of the claims were invalid. *Sprint Commc'ns Co.*, 255 F. Supp. 3d at 1137-38. Based on this prior action, Plaintiff argues that Defendants should be precluded from re-litigating validity of the patents and patent claims at issue in the Kansas Action, and the same issues that were adjudicated in the Kansas Action (to wit, the Call Control and Broadband Patents' compliance with § 112 and the doctrine of equivalents). (D.I. 461 at 5).

The parties dispute the first and the fourth factors of issue preclusion: whether the identical issue was previously adjudicated and whether the party being precluded from relitigating the issue was fully represented in the prior action.

### 1. Defendants Were Fully Represented in the Kansas Action

Plaintiff argues that Defendants were fully represented and had a full and fair opportunity to litigate in the Kansas Action. (D.I. 461 at 8). Plaintiff asserts that after the merger between Defendants and Time Warner Cable in May 2016, Defendants were in control of the Kansas Action litigation, including the jury trial and the appeals. (*Id.* at 9).

Defendants argue that since the merger took place after claim construction, fact and expert discovery, and most of summary judgment briefing, most of the important decisions in the litigation had been made, leaving them without "effective choice as to the legal theories and proofs." (D.I. 502 at 8). Because of this, Defendants contend that the Kansas Action has no preclusive effect as they did not have control over nor were parties to the Kansas Action. (*Id.* at 2).

As a general principle, "one is not bound by a judgment in personam in a litigation in which he is not designated as a party." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). This is because a nonparty to a suit usually has not had a "full and fair opportunity to litigate" the issues in the suit. *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008). However, there are six recognized exceptions to this general rule, *id.* at 893, and three have been raised in this case: "substantive legal relationship," "represented by someone with the same interests," and "assumed control." *Id.* at 893-95; (D.I. 461 at 8-12).  I need only address the third of these three.

Under the "assumed control" exception, "a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered." *Taylor*, 553 U.S. at 895 (quoting *Montana*, 440 U.S. at 154). In other words, a nonparty to an action "who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." *Marshak v. Treadwell*, 240 F.3d 184, 195 (3d Cir. 2001) (quoting Restatement (Second) of Judgments § 39). To have control over litigation, the nonparty must have "effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action" and "control over the opportunity to obtain review." *Id.* (quoting Restatement (Second) of Judgments § 39 cmt. c.). "Because such a person has had 'the opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation." *Taylor*, 553 U.S. at 895 (quoting Restatement (Second) Judgments § 39 cmt. a).

Under this exception, Defendants had the full and fair opportunity to litigate in the Kansas Action. In 2011, Plaintiff filed an infringement suit against Time Warner Cable, Time Warner Entertainment-Advance/Newhouse Partnership, and other related defendants (the "TWC Defendants"). (D.I. 503-1, Exh. 1 at 3 of 752). On May 26, 2015, Defendant Charter announced

a definitive agreement for Charter to merge with Time Warner Cable. (D.I. 462-1, Exh. F at 230 of 755). In the same press release, Defendant Charter announced an amended agreement for its acquisition of Bright House Networks from Advance/Newhouse Partnership. (*Id.*). Defendant Charter declared on May 18, 2016 that it had completed its merger with Time Warner Cable and its acquisition of Bright House. (*Id.*, Exh. G at 235 of 755). The Kansas Action was tried from February 13, 2017 to March 3, 2017. *See Sprint Commc'ns*, 255 F. Supp. 3d at 1137.

At oral argument, both parties agreed that Defendant Charter had control over the Kansas Action as of May 2016, the month of the merger with Time Warner Cable. (D.I. 554 at 12:6-20). While litigation decisions were made before Defendant Charter acquired Time Warner Cable, these decisions do not preclude the conclusion that Defendant Charter assumed control of the Kansas Action and the subsequent appeals. *See AstraZeneca UK Ltd. v. Watson Labs., Inc. (NV)*, 905 F. Supp. 2d 596, 603 (D. Del. 2012).

In *AstraZeneca*, AstraZeneca was involved in litigation with Cobalt when Cobalt was acquired by Watson Laboratories' parent in December 2009. *Id.* Cobalt and AstraZeneca went to trial in June 2010. *Id.* at 598. In a later action, when AstraZeneca sued Watson and sought to preclude it from relitigating certain issues litigated in the Cobalt case, the court agreed that collateral estoppel should apply. *Id.* at 603. Even though Watson's parent acquired Cobalt six months before trial, the court determined that Watson's parent controlled Cobalt during the pendency of litigation and the subsequent appeals. The parties did stipulate to that, but the court also noted that the facts indicated that Watson's parent "had control and an interest" in the 2010 litigation, and "therefore, a full and fair opportunity to litigate." *Id.*

Similarly, in this case, Defendants had control of and an interest in the Kansas Action as of May 2016. (D.I. 554 at 12:6-20). Defendants assumed control over the litigation nine months

prior to trial and retained that control during trial and throughout the appeals process. Defendants had "effective choice as to the legal theories and proofs" advanced at trial and on appeal and had "control over the opportunity to obtain review." *Marshak*, 240 F.3d at 195 (quoting Restatement (Second) of Judgments § 39 cmt. c.). While litigation decisions were made prior to Defendants merging with Time Warner Cable and assuming control over the litigation, Defendants still had their day in court as they controlled the legal theories and arguments advanced at trial and on appeal. *See Taylor*, 553 U.S. at 895. Defendants assumed control over the Kansas Action in May 2016, and thus were fully represented in that case.[2]

## 2. Identical and Non-Identical Issues of Invalidity

The parties disagree as to whether identical issues were previously adjudicated in the Kansas Action. In the Kansas Action, the jury found claims 1 and 7 of the '084 Patent; claims 1, 24, and 38 of the '3,561 Patent; claims 1 and 4 of the '052 Patent, claims 1, 5, and 7 of the '429 Patent; and claims 1 and 26 of the '064 Patent not invalid for lack of written description, anticipation, or obviousness. (D.I. 462-1, Exh. Q at 493-505 at 755). The district judge concluded that sufficient evidence supported the jury's finding of validity. *Sprint Commc'ns*, 255 F. Supp. 3d at 1147.

Based on this, Plaintiff contends that Defendants should be precluded from litigating invalidity of the patents and patent claims previously adjudicated in the Kansas Action. (D.I. 461 at 6). Plaintiff also argues that Defendants should be precluded from litigating the doctrine of equivalents and  invalidity under § 112 of all asserted claims of the Broadband and Call Control

---

[2] As the "assumed control" exception applies, the Court will not address of the other raised exceptions of "substantive legal relationship" and "represented by someone with the same interests."

Patents (instead of just those in the Kansas Action), as the identical challenges made in the Kansas Action are being made in this action. (*Id.* at 13).

Defendants argue first that invalidity is not a single issue for the purposes of issue preclusion. (D.I. 502 at 10). Defendants also contend that collateral estoppel should not apply, as the issues Plaintiff moves to preclude in this action are not identical to those addressed in the Kansas Action. (*Id.* at 11). Defendants assert that their enablement defense was not previously adjudicated because it was not presented to the jury. (*Id.*). Defendants also argue that there are different issues for anticipation and obviousness as they have different prior art, and that a change in claim construction has created a different issue for invalidity of the Call Control Patents under §112. (*Id.* at 12-13). Lastly, Defendants assert that the equivalence issues are not the same between this action and the Kansas Action. (*Id.* at 14).

### a.  Invalidity as a Single Issue

Plaintiff contends that invalidity is a single issue; as it was previously adjudicated in the Kansas Action, Defendants should be estopped from litigating it in this action. (D.I. 461 at 6-7). Plaintiff further argues that regardless of whether validity is a single issue, Defendants should be estopped from litigating validity under 35 U.S.C. §§ 102, 103, and 112, as invalidity under those sections was litigated in the Kansas Action. (*Id.* at 7 n.7). Specifically, Plaintiff contends that the validity of at least claims 1 and 7 of the '084 Patent; claims 1, 24, and 38 of the '3,561 Patent; claims 1 and 4 of the '052 Patent; claims 1, 5, and 7 of the '429 Patent; and claims 1 and 26 of the '064 Patent were litigated and necessary to the judgment in the Kansas Action. (*Id.* at 6).

Defendants contend that that validity is not a single issue for the purposes of issue preclusion, and that they should not be precluded from litigating validity in this action. (D.I. 502 at 9-11).

Whether validity is a single issue for the purposes of issue preclusion has not been addressed by the Federal Circuit or the Third Circuit. *See Orexo AB v. Actavis Elizabeth LLC*, 371 F. Supp. 3d 175, 183 (D. Del. 2019). Many district courts have held that validity is a single issue in a collateral estoppel analysis. *See id.* at 183 n.6 (collecting cases).

The decisions in this District are split on the issue. *Compare AstraZeneca UK*, 905 F. Supp. 2d at 602-03 (concluding that invalidity is a single issue for the purposes of collateral estoppel), *with Orexo*, 371 F. Supp. 3d at 184 (declining "to adopt a per se rule that validity is a single issue for the purposes of issue preclusion"), *and TASER Int'l, Inc. v. Karbon Arms, LLC*, 6 F. Supp. 3d 510, 519 (D. Del. 2013) (holding that "each theory of invalidity is a single issue").[3]

I find Judge Connolly's decision in *Orexo* persuasive. This decision relied on the Supreme Court's opinion in *Blonder-Tongue*, Third Circuit law defining "identical issues," and important collateral estoppel and patent law policies. *See Orexo*, 371 F. Supp. 3d at 184.

Third Circuit precedent supports the reasoning that invalidity defenses are not identical issues. The Third Circuit instructs that issues are identical where "the same general legal rules govern both cases" and where "the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4425 (1981[4])). Different legal rules govern each invalidity theory. Sections 101, 102, 103, and 112 each require a defendant to establish different elements. *See Orexo*, 371 F. Supp. 3d at 185-86. The fact that

---

[3] I wrote *TASER*. But *TASER* considered the issue in a summary fashion, which is why I have reconsidered the issue now.

[4] Despite the forty-year difference between the cited edition and the most current edition, Federal Practice & Procedure still states the same parameters for identical issues. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4425 (3d ed. 2020).

each theory of invalidity has its own elements and required proof establishes that they are not governed by "the same general legal rules." *Suppan*, 203 F.3d at 233.

Under Federal Circuit precedent, "it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood*, 735 F.3d at 1342. Different elements and legal rules are litigated under sections 101, 102, 103, and 112, as the fact finder must determine whether the patent is invalid due to, e.g., its subject matter, anticipation, obviousness, written description, enablement, and/or indefiniteness.  While the overall question of the patent's validity is the same, the theories of invalidity are not identical. Each one analyzes different legal rules and qualities of the patent. Foreclosing a defendant from making any invalidity arguments because the defendant previously litigated invalidity on a different ground prevents defendant from being heard on a distinct issue with its own legal rules.

As each theory of invalidity has its own legal rules and seeks a different answer on the question of invalidity, each theory is its own issue for the purposes of issue preclusion. Thus, Plaintiff's arguments on precluding validity challenges will be evaluated by theory.

### b.  Enablement and Written Description Defenses

Plaintiff argues that Defendants should be precluded from litigating the Broadband and Call Control Patents' compliance with 35 U.S.C. § 112, as identical challenges were litigated in the Kansas Action. (D.I. 461 at 12-13). Plaintiff contends that both the written description and enablement defenses were litigated in the Kansas Action for the specifications at issue in the instant case, so Defendants should be unable to raise them here. (*Id.*). Plaintiff argues that while enablement was not ultimately presented to the jury in the Kansas Action, it was still adjudicated, actually litigated, and necessary. (*Id.*).

Defendants set forth two grounds for why issue preclusion should not apply here: (1) enablement was not adjudicated in the Kansas Action as it was not presented to the jury; and (2) a different claim construction in this case does not bar Defendants from asserting invalidity of the Call Control Patents under 35 U.S.C. § 112. (D.I. 502 at 11-13). Defendants argue that they should not be precluded from presenting an enablement defense, as it was not presented to the jury in the Kansas Action. (D.I. 502 at 11). For that reason, Defendants assert that the issue was never adjudicated in the prior litigation. (*Id.* at 11-12). Defendants also argue that the enablement defense was already waived before the merger between Defendant Charter and Time Warner Cable, so Defendants should have the opportunity to litigate the defense here. (*Id.*).

Further, Defendants contend that issue preclusion should not bar their § 112 challenges to the Call Control Patents, as there has been a change in claim construction between the Kansas Action and this case. (*Id*. at 12-13). Defendants argue that they should have the opportunity to present new written description and enablement defenses that "could not be meaningfully adjudicated under the prior court's constructions." (*Id.* at 13). Defendants do not respond to Plaintiff's argument that the identical issues of validity under § 112 were litigated as to the Broadband Patents in the Kansas Action. (*See id.* at 12-13).[5]

Plaintiff counters that the change in claim construction does not impact the application of claim preclusion, as the Court's construction is a minor and narrowing change, which makes the patents less vulnerable to Defendants' § 112 defenses. (D.I. 525 at 8).

---

[5] Plaintiff made this argument in relation to both the Call Control and Broadband Patents, but did not distinguish between the two sets of patents. Defendants responded only referring to the Call Control Patents. Plaintiff does not claim Defendants were waiving something by doing so. I think both sides understood the issue not to depend on the distinction between the two sets of patents. Thus, I make the same ruling on both sets of patents.

The Federal Circuit has recognized that where there is a change in law, collateral estoppel does not apply. *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1381 (Fed. Cir. 2018). However, the issue here is a change in claim construction. Neither party has identified a Federal Circuit case on point.

Plaintiff argues that under *Fairchild Semiconductor Corp.*, issue preclusion should apply. (D.I. 525 at 8). There, the court determined that a "minor" change in claim construction did not prevent the application of issue preclusion, as the issue was still identical because the defendant brought the same validity challenges. *Fairchild Semiconductor Corp. v. Power Integrations, Inc*., 2015 WL 1905871, at *2 (D. Del. Apr. 23, 2015). Defendants contend that a change in claim construction is relevant under *Allergan Sales*. In that case, the court determined that it would be "inappropriate" to bar the defendant "from asserting new theories of invalidity under a new, broader claim construction of critical terms where new theories under § 112 are included." *Allergan Sales, LLC v. Sandoz, Inc.*, 211 F. Supp. 3d 907, 915 (E.D. Tex. 2016).

The claim construction in this case differs from that in the Kansas Action. In this case, the Court construed "packet communication system"/ "packet system"/ "asynchronous communication system"/ "broadband network" to all mean "system wherein packets are routed by network elements, wherein at least one network element is a switch." (D.I. 304 at 3-4). In the Kansas Action, the district court declined to construe "packet communication system," "packet system," and "asynchronous communication system." (D.I. 503-1, Exh. 17 at 525-27 of 752). "Broadband network" was not discussed in the claim construction opinion. (*See id.*, Exh. 17).

In the Kansas Action, the district court excluded testimony of one witness pertaining to whether the switch existed but permitted the testimony of the TWC Defendants' expert Dr. Paul Min. (D.I. 462-1, Exh. Y at 742 of 755). Dr. Min testified that the particular switch did not exist

and thus that the inventor did not possess his invention. (*Id.*). The court, in its ruling excluding the other witness, stated that "the patent claims here do not require the use of an ATM switch. Thus, the fact that no such switch existed is not dispositive." (*Id.*). The district court held that "the jury was properly instructed that the full scope of the claim need not be expressly disclosed in the specification, so long as a person skilled in the art would have understood the scope of the claim." (*Id.* at 743 of 755). The court stated that Dr. Min testified to "the non-existence of the ATM switch, but the jury was not required to credit that testimony." (*Id.* at 743 n.5 of 755).

It is undisputed that in the Kansas Action, the TWC Defendants argued that the Call Control Patents were invalid for lack of written description. (*Id.* at 742 of 755). The TWC Defendants' arguments centered on the inventor not having possession of the invention, as the specification discloses an ATM switch that did not exist at the time of patent prosecution. (*Id.*). It is also undisputed that Defendants plan to present the same § 112 invalidity defenses for the Call Control Patents. (*Id.*, Exh. T at 515-17 of 755). Defendants maintain that they should not be barred by collateral estoppel because with the requirement of a switch to practice the asserted claims of the Call Control Patents, "the specification's failure to disclose a suitable ATM, IP or other switch that can be used to perform the claimed methods represents new written description and enablement defenses that could not be meaningfully adjudicated previously under the prior court's constructions." (D.I. 502 at 13).

I agree with Defendants. Collateral estoppel is intended to bar parties from re-litigating matters that they previously had a full and fair opportunity to litigate. *See Montana*, 440 U.S. at 153. Defendants did not have a full and fair opportunity to litigate their § 112 defenses under this Court's claim construction, and they should have the opportunity to do so.

Under the claim construction in the Kansas Action, no switch was required. In this case, the Court determined that a switch is required for the asserted claims of the Call Control Patents. The claim construction in this case mandates that to satisfy the requirements of § 112, a person skilled in the art would understand that the scope of the claim includes a required switch. Therefore, if a switch was required, but no such switch existed (as Defendants argue), a jury could find that the inventor did not possess the invention and/or that a reasonable person skilled in the art would not have been able to practice the claims without undue experimentation.

Claim construction is tightly intertwined with the analysis of § 112 defenses. "[C]laim construction is inherent in any written description analysis." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1319 (Fed. Cir. 2011). "A district court must base its analysis of written description under § 112, ¶ 1 on proper claim construction." *Koninklijk Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010). As for enablement, the "enablement inquiry necessarily depends on an interpretation of the claims." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020) (quoting *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006)). As claim construction is integral to an analysis of written description and enablement, a difference in claim construction can make issues not identical.

Issues are not identical where different legal rules govern cases and where the facts are distinguishable. *See Suppan*, 203 F.3d at 233. Here, the claim construction was based on intrinsic evidence (D.I. 296 at 20), making it a conclusion of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). My claim construction is a different legal conclusion than the Kansas Court's claim construction, meaning Defendants' theories of invalidity for lack of written

15

description and enablement will be based on a different legal ruling in the instant case than in the Kansas Action. Thus, the issues are not identical, and issue preclusion does not apply.

The issues of invalidity under § 112 are not identical between the Kansas Action and the instant case. The requirement of a switch under this Court's claim construction creates different issues of written description and enablement than were addressed in the Kansas Action. In this case, the application of issue preclusion would deny Defendants a meaningful opportunity to litigate their § 112 invalidity defenses under a claim construction that requires an element not required in the Kansas Action.

Plaintiff's motion for partial summary judgment of collateral estoppel regarding Defendants' § 112 defenses is denied.

### c.   Anticipation and Obviousness Defenses

Plaintiff argues that Defendants should be precluded from challenging the validity of the patents and claims involved in the Kansas Action under §§ 102 and 103. (D.I. 525 at 6).

Defendants contend that they should not be precluded from challenging validity under these sections, as they are asserting different prior art in this case. (D.I. 502 at 13). Defendants argue that use of different prior art presents different issues. (*Id.*). Specifically, Defendants contend that the prior art references currently at issue are Bolliger, Hiller '636, Hiller '445, Madonna, Bartholomew, Ambrosch, Russell, Q.700, Q.702, and Q.705, whereas the prior art references at issue in the Kansas Action were "Larry Schessel's European patent application" and a "1991 Telecom Report." (*Id.*). Plaintiff counters that "a promise to offer 'different evidence' cannot defeat preclusion." (D.I. 525 at 8).

I agree with Plaintiff. In *Dana*, the Federal Circuit concluded that different prior art did not prevent the issues from being identical. *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1325

(Fed. Cir. 2003). There, the defendants argued that the products were the same and that, as in the first action, they denied infringement, but that the evidence submitted was qualitatively and quantitively different from the evidence used in the first action. *Id.* The Federal Circuit held that while the defendants wished to "buttress their case through different evidence," the issues in the actions were identical, as the actions involved "the same patent, the same accused products, and the same argument with respect to [infringement]." *Id.*

Here, Defendants wish to "buttress their case" with different prior art evidence[6]. *See id.* However, this is not enough to defeat issue preclusion. Much like *Dana*, the asserted patents in this action are the same as in the Kansas Action and Defendants put forth the same invalidity arguments. Even though there is different prior art evidence that Defendants could use to argue invalidity defenses, the issues are still identical. *See id.*

Besides for listing prior art that is different from the prior art used in the Kansas Action, Defendants do not make any argument for how the different prior art makes the issue no longer identical. (*See* D.I. 502 at 13). Defendants only cite to *TASER International.* (*Id.* at 13-14). In that case, I quoted 6 Annotated Patent Digest § 38.46, "if the invalidity theories are based on . . . different prior art, the requirement of identicality is not satisfied." *TASER Int'l*, 6 F. Supp. 3d at 519. Beyond this, Defendants do not cite any case law indicating that different prior art automatically makes an issue non-identical to one litigated in a prior action. And I now think I went too far in *TASER*. For example, for anticipation, the issue is whether there is a piece of

---

[6] I note that some references that Defendants argue are different prior art were previously considered prior art references in the Kansas Action. In their Second Supplemental Invalidity Contentions in the Kansas Action, the TWC Defendants listed as prior art: Madonna, Ambrosch, Q.702, Q.705, Bartholomew, and Russell (D.I. 461-2, Exh. D at 97, 103, 113, 117 of 755). The TWC Defendants included these prior art references as part of their invalidity contentions, but chose not to present them at trial.

prior art with the same limitations as the asserted claim. Whether Prior Art A or Prior Art B is the piece of prior art that meets that requirement is a question of proof, not a different invalidity theory as to why the asserted claim is invalid.

Purposes of collateral estoppel include protecting parties from the expense of multiple lawsuits and the conservation of judicial resources. *See Montana*, 440 U.S. at 153-54. These purposes are not served in a case such as this, where Defendants are seeking to relitigate the same issues based on different prior art, including some prior art that was raised in invalidity contentions in the Kansas Action. Defendants had a full and fair opportunity to litigate anticipation and obviousness using prior art in the Kansas Action. They are not entitled to a second bite at the anticipation and obviousness apples. Therefore, Defendants will be precluded from relitigating anticipation and obviousness for the patents and patent claims asserted in the Kansas Action, as those invalidity theories were fully litigated there. Plaintiff's motion for partial summary judgment of collateral estoppel on this issue is granted.

### d. Doctrine of Equivalents

Plaintiff contends that Defendants should be precluded from relitigating the doctrine of equivalents, specifically whether Internet Protocol ("IP") media gateways are equivalent to an ATM interworking multiplexer. (D.I. 461 at 14). Plaintiff asserts that the Kansas Action previously determined that an IP media gateway was interchangeable with an ATM interworking multiplexer, and so the Defendants should not be able to litigate the applicability of the doctrine of equivalents on this basis. (*Id.*). Defendants counter that Plaintiff's motion fails as it has not proven that the equipment determined to be equivalent in the Kansas Action is the same equipment used by Defendants. (D.I. 502 at 14). Defendants argue that the record shows that there are numerous differences between the equipment determined to be equivalent in the Kansas

Action and Defendants' equipment, and for that reason, they should not be precluded from litigating equivalence. (*Id.*).

The Kansas Action determined that non-party Time Warner Cable's MGX 8880 was equivalent to an ATM interworking multiplexer. *See Sprint Commc'ns*, 760 F. App'x at 987. The Kansas Action, however, did not determine which equipment was used by Defendants in the instant case or whether such equipment is equivalent to an ATM interworking multiplexer. Plaintiff has not shown that Defendants used the same equipment that was found equivalent in the Kansas Action. Defendants identify differences between the MGX 8880 and the equipment they used, in that the MGX 8880 uses an ATM backplane and was designed for swappable ATM/IP cards, meaning that it could output IP or ATM packets depending on the card that was used. (D.I. 502 at 14-15). Such contentions are supported by evidence in the record.

Plaintiff's expert, Dr. Stephen Wicker, opines that Defendant Charter did not use an MGX 8880 and that Defendant Bright House only used MGXs in a limited manner and prior to 2007. (D.I. 503-1, Exh. 23 at 737-38, 740 n.50 of 752). Defendants also proffer evidence that shows that Defendants did not use any media gateways that had an ATM backplane during the damages period. (*Id.*, Exh. 24 at 747, 749 of 752 (internal page numbering 226:3-227:8, 233:7-9) (Defendant Bright House only used ATM when transporting IP in 2004 and 2005); *Id.*, Exh. 25 at 752 of 752 (internal page numbering 233:7-9) (Defendant Charter did not have an ATM network while deponent [Kent Mitchell] worked there)).

Therefore, an identical issue was not litigated in the Kansas Action. Issues are identical where "the same general legal rules govern both cases" and where "the facts of both cases are indistinguishable as measured by those rules." *Suppan*, 203 F.3d at 233. The facts in this case are distinguishable from those in the Kansas Action. The facts in the record establish that

Defendants did not use the same equipment that the Kansas Action determined infringed Plaintiff's patents under the doctrine of equivalents. Defendants have not yet had the opportunity to litigate whether their equipment was equivalent to the inventions in the asserted claims. They will not be precluded from such litigation in this case. Plaintiff's motion for partial summary judgment of collateral estoppel is denied as to Plaintiff's doctrine of equivalents theories.

### B.  Equitable Defenses

Plaintiff seeks summary judgment on Defendants' equitable defenses of acquiescence, waiver, and unclean hands.[7]

### 1. Acquiescence and Waiver

Plaintiff first contends that Defendants' equitable defenses fail as a matter of law under the Supreme Court's decision in *SCA Hygiene Products*, as they are based on Plaintiff's alleged delay in filing suit. (D.I. 461 at 17). There, the Supreme Court held that in a patent case, laches could not be used as a defense against damages where infringement occurred within the time period set by 35 U.S.C. § 286. *SCA Hygiene Prods., Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017). Defendants argue that *SCA Hygiene Products* involves laches, not acquiescence or waiver, and therefore does not apply in this case. (D.I. 502 at 27).

I agree with Defendants. *SCA Hygiene Products* concerns the laches defense, not any other equitable defenses. The decision does not even discuss acquiescence, waiver, or any other equitable defenses. Other courts have similarly determined that *SCA Hygiene Products* did not concern acquiescence. *See Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 2019 WL 861394,

---

[7] Defendants have withdrawn the asserted defenses of exhaustion and equitable estoppel. (D.I. 502 at 24 n.19; D.I. 138 at 2). Plaintiff's motions for summary judgment on those defenses are dismissed as moot. Defendants also assert a license defense based on Plaintiff's participation in standards setting organizations and Plaintiff is not seeking summary judgment on that defense. (D.I. 525 at 10 n.18).

at *7 n.5 (N.D. Ill. Feb. 22, 2019); *JumpSport, Inc. v. Acad., Ltd*., 2018 WL 10124888, at *4 (E.D. Tex. Sept. 6, 2018).

Beyond its reliance on *SCA Hygiene Products*, Plaintiff argues that Defendants have not established their acquiescence or waiver defenses. Plaintiff contends that Defendants have not shown that Plaintiff "actively represented that it would not assert its patent rights." (D.I. 461 at 18). Plaintiff argues that Defendants cite no evidence to support the proposition that Plaintiff intentionally relinquished its patent rights. (*Id.*).

Defendants counter that there is evidence from which a reasonable trier of fact could conclude that Plaintiff knew about Defendants' actions and that its delay in filing suit constituted acquiescence to Defendants' alleged infringement. (D.I. 502 at 28). Defendants contend that there are genuine disputes of material fact that preclude summary judgment as there is evidence showing that Plaintiff knew of its rights and engaged in business with Defendants for fourteen years before filing suit. (*Id.*). Defendants point to interactions between Plaintiff and Defendants in the years prior to this suit as evidence that Plaintiff knew what Defendants were doing and remained silent about any potential infringement. (*Id.* at 25-26).

"A party is deemed to have acquiesced when it 'has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe that the act has been approved." *Sonos, Inc. v. D&M Holdings Inc.*, 2016 WL 4249493, at *5-6 (D. Del. Aug. 10, 2016) (citing *Klassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014)).

For a waiver defense, a defendant must establish that the plaintiff had "an existing right, knowledge of the right, [and] an actual intention to relinquish the right." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 409 (D. Del. 2009).

Defendants have not shown that there is an issue of disputed fact as to their acquiescence and waiver defenses. For both waiver and acquiescence, Defendants' argument centers on Plaintiff's delay in filing suit. (D.I. 502 at 27-29). While Defendants' evidence shows that Plaintiff was aware of the services Defendants offered and the parties had business discussions prior to Sprint first asserting its patents in 2007 (*see, e.g.*, D.I. 505-1, Exh. 52-62), this does not establish a genuine issue of material fact for Defendants' acquiescence or waiver defenses. Plaintiff's silence is not enough to show that it had an "actual intention" to relinquish its patent rights or that it "made an affirmative grant of consent or permission" to Defendants' conduct. As Defendants have not shown that there is a genuine issue of material fact, Plaintiff's motion for partial summary judgment on Defendants' waiver and acquiescence defenses is granted.

### 2. Unclean Hands

Plaintiff moves for summary judgment on Defendants' unclean hands defense. (D.I. 461 at 18). After first arguing that Defendants have not cited any evidence for this defense (*id.*), Plaintiff contends that it is entitled to summary judgment as Defendants' unclean hands defense rests on the same facts supporting Defendants' theory of inequitable conduct, on which Plaintiff has also moved for summary judgment. (D.I. 525 at 12). Defendants argue that Plaintiff is not entitled to summary judgment, first because Plaintiff has not met its burden of informing the Court of the basis for its motion. (D.I. 502 at 29). Defendants also contend that there is a genuine factual dispute as to whether Plaintiff obtained the Asserted Patents through misrepresentations to the United States Patent & Trademark Office ("USPTO"). (*Id.*).

To establish an unclean hands defense, Defendants must show that "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other party (5) and affects the balance of equities between the litigants." *Sun Microsystems, Inc.*, 630 F. Supp. 2d at 410 (quoting *Castle v. Cohen*, 676 F. Supp. 620, 627 (E.D. Pa. 1987)).

 Defendants' unclean hands defense rests on the same evidence and arguments that supported their arguments against summary judgment on inequitable conduct. (D.I. 502 at 29; D.I. 525 at 12). Therefore, the motions for summary judgment on inequitable conduct and summary judgment on the unclean hands defense will rise or fall together. In a decision contemporaneous with this one, the Court is denying summary judgment of no inequitable conduct as there are genuine issues of material fact as to whether Plaintiff had made material misstatements to the USPTO. For the same reasons, Plaintiff's motion for summary judgment on Defendants' unclean hands defense is denied as there are genuine factual disputes as to whether Plaintiff is "guilty of conduct involving fraud, deceit, unconscionability, or bad faith." *See Sun Microsystems, Inc.*, 630 F. Supp. 2d at 410.

## IV.    CONCLUSION

Plaintiff's motion for partial summary judgment of collateral estoppel (D.I. 460) is granted in part and denied in part. The motion is granted as to Defendants' §§ 102 and 103 invalidity defenses to the five patents that were litigated in the Kansas Action. Defendants' motion for summary judgment of no collateral estoppel (D.I. 498) is denied on this ground.

Plaintiff's motion for partial summary judgment of collateral estoppel is denied as to Defendants' § 112 invalidity defenses and Plaintiff's doctrine of equivalence theories.

Defendants' motion for partial summary judgment of no collateral estoppel is granted on these grounds.

Plaintiff's motion for summary judgment on Defendants' equitable defenses (D.I. 460) is granted as to acquiescence and waiver and denied as to unclean hands.