IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY LP,<br><br>    Plaintiff,<br>              v.<br><br>CHARTER COMMUNICATIONS, INC., et al.,<br><br>    Defendants. | C.A. No. 17-1734-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br><br>    Plaintiff,<br>              v.<br><br>WIDEOPENWEST, INC., et al.,<br><br>    Defendants. | C.A. No. 18-361-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br><br>    Plaintiff,<br>              v.<br><br>ATLANTIC BROADBAND FINANCE, LLC, et al.,<br><br>    Defendants. | C.A. No. 18-362-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br><br>    Plaintiff,<br>              v.<br><br>GRANDE COMMUNICATIONS NETWORKS, LLC, et al.,<br><br>    Defendants. | C.A. No. 18-363-RGA |

MEMORANDUM OPINION

Christina B. Vavala and Stephen J. Kraftschik, POLSINELLI PC, Wilmington, DE; Aaron E. Hankel, B. Trent Webb, John D. Garretson, Jonathan M. Hernandez, Jordan T. Bergsten, Lauren E. Douville, Lydia C. Raw, Mark D. Schafer, Ryan D. Dykal, and Ryan J. Schletzbaum, SHOOK, HARDY & BACON LLP, Kansas City, MO; Michael W. Gray and Robert H. Reckers, SHOOK, HARDY & BACON LLP, Houston, TX, attorneys for Plaintiff Sprint Communications Company LP.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER PA, Wilmington, DE; Alex Henriques, Robert A. Appleby, Ryan Kane, James E. Marina, Gregory Arovas, and Jeanne M. Heffernan, KIRKLAND & ELLIS LLP, New York, NY; Bao T. Nguyen, KIRKLAND & ELLIS LLP, San Francisco, CA; Gregory Polins, KIRKLAND & ELLIS LLP, Chicago, IL; Luke Dauchot, KIRKLAND & ELLIS, LLP, Los Angeles, CA; Daniel L. Reisner, David S. Benyacar, and Michael Block, ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY; Robert J. Katerberg, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC; Thomas T. Carmack, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, CA, attorneys for Defendants Charter Communications, Inc. et al.

Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Robinson Vu, Lindsay Volpenhein Cutié, Natalie Alfaro Gonzales, and Amy E. Bergeron, BAKER BOTTS LLP., Houston, TX; Timothy S. Durst, BAKER BOTTS LLP, Dallas, TX, attorneys for Defendants WideOpenWest Networks, Inc., Atlantic Broadband Finance, LLC, and Grande Communications Networks, LLC, et al.

March 16, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Plaintiff's Motion for Summary Judgment of No Inequitable Conduct. (D.I. 463). I have reviewed the parties' briefing. (D.I. 464, 502, 524).[1] The motion and briefing have been filed in five cases. I previously dismissed the motion against Mediacom, as Mediacom did not raise a defense or counterclaim of inequitable conduct. (No. 17-1736, D.I. 427).

### I.     BACKGROUND

Plaintiff Sprint Communications alleged patent infringement against Defendants Charter Communications, WideOpenWest,[2] Atlantic Broadband Finance,[3] and Grande Communications Networks.[4] Plaintiff currently asserts that Defendants' Voice-over-IP ("VoIP") systems infringe nine[5] patents, which can be grouped into the Call Control Patents, the Broadband Patents, and the Enhanced Services Patent. The Call Control Patents are Nos. 6,452,932 ("the '932 Patent"), 6,463,052 ("the '052 Patent"), 6,633,561 ("the '3,561 Patent"), 7,286,561 ("the '6,561 Patent"), and 7,505,454 (the '454 Patent"). The Broadband Patents are Nos. 6,343,084 ("the '084 Patent"), 6,473,429 ("the '429 Patent"), and 6,298,064 ("the '064 Patent"). Patent No 6,697,340 ("the '340 Patent") is the Enhanced Services Patent.

### II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

---

[1] Unless otherwise specified, I will cite to the 17-1734 docket.
[2] C.A. No. 18-361.
[3] C.A. No. 18-362.
[4] C.A. No. 18-363.
[5] Plaintiff asserted claims from eleven patents at the time of the briefing, but has since dismissed all claims of two of them. (*See* D.I. 432 at 2; D.I. 493). The reduction to nine patents has no impact on the analysis.

R. CIV. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case.  *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989).  A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ."  FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 247–49.  If the non-moving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III.   ANALYSIS

Defendants assert an affirmative defense of inequitable conduct against Plaintiff for both the Call Control and Broadband Patents.[6] Plaintiff contends that it is entitled to summary judgment of no inequitable conduct, as Defendants have failed to raise a genuine issue of material fact that supports their theories of inequitable conduct. (D.I. 464 at 1).

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the [Patent Office]." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Specifically, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the [information], knew that it was material, and made a deliberate decision to withhold it." *Id.* In exceptional cases, "[w]hen the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is [deemed] material" as a matter of law. *Id.* at 1292. Generally, however, "[m]ateriality is defined by what a reasonable examiner would have considered important in deciding whether to allow a patent application." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008). Materiality is a question of fact. *Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1360 (Fed. Cir. 2008).

---

[6] Plaintiff sought summary judgment against Defendants WideOpenWest, Grande, and Atlantic Broadband in regard to their inequitable conduct argument concerning Plaintiff's failure to disclose the Tsuboi reference. But Defendants confirmed they are not pursuing that argument. (D.I. 502 at 24). Further, the Court has found that incorporation by reference of the Call Control Specification into the Broadband Specification does not constitute but-for materiality. (*See id.*, citing D.I. 102 at 7). Defendants do not challenge that ruling either. (D.I. 502 at 24). Therefore, the Court does not review these issues.

4

An applicant has a "duty to disclose to the [Patent] Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56(a). "The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." *Id.*

Enablement is an issue material to patentability. *See* 35 U.S.C. § 112.

### A. Call Control Patents

For the Call Control Patents, Defendants allege that three of Plaintiff's representatives "repeatedly told the PTO [Patent and Trademark Office] that ATM switches capable of receiving and processing signaling to set up a communications path already existed as of the claimed date" and that such "representations were false when made." (D.I. 33 at 29-30). Plaintiff argues that it is entitled to summary judgment on this defense because such disclosure is not material as, under the Court's construction, an Asynchronous Transfer Mode ("ATM") switch is not a requirement of the asserted claims. (D.I. 464 at 3). Defendants counter that Plaintiff's alleged misrepresentations are material, as claiming more broadly than the disclosed embodiment increases disclosure obligations. (D.I. 502 at 19). Further, Defendants argue that since Plaintiff's "knowing and repeated false representations to the USPTO" are egregious misconduct, they are not even required to prove materiality. (*Id.*).

There are genuine issues of material fact regarding the materiality of Plaintiff's alleged failure to disclose information about the ATM switch. Defendants proffer evidence that Plaintiff represented to the PTO that ATM switches that could work (that is, by being able to respond to signaling) in the disclosed invention existed. (D.I. 504-1, Exh. 30 at 78 of 288 ("broadband switch – Fore Systems ASX-100"); D.I. 504-1, Exh. 32 at 109 of 288; D.I. 503-1 at Exh. 15 at 461-64 of 752). Defendants' evidence also supports its argument that such switches did not exist

5

(and that the switch identified by Plaintiff, while it existed, could not perform the required function), and that Plaintiff knew that. (D.I. 503-1, Exh. 15 at 439, 461-64 of 752; D.I. 503-1, Exh. 19 at 632-33 of 752; D.I. 504-1, Exh. 33 at 114 of 288 (lines 6-12); D.I. 504-1, Exh. 35 at 152-53 (internal page numbering 40:12-41:24)). While Plaintiff argues that the failure to disclose a working ATM switch is not material to patentability (D.I. 524 at 2), a reasonable fact finder could conclude, based on the evidence, that such a failure to disclose was material. A reasonable fact finder could determine that a reasonable examiner would have considered the lack of a functioning ATM switch material to the evaluation of enablement and written description. As a reasonable fact finder could find for Defendants and there are genuine disputes of material fact pertaining to materiality, Plaintiff's motion for summary judgment on this ground is denied.

### B.  Broadband Patents

For the Broadband Patents, Defendants allege inequitable conduct as one of Plaintiff's lawyers never disclosed to the PTO that Plaintiff could not get the Broadband Patents to work. (D.I. 33 at 36-37). Defendants allege that this failure to disclose was material, because had the PTO known this, it would have found that the patents did not meet the enablement requirement. (*Id.* at 38).

Plaintiff moves for summary judgment on this affirmative defense, arguing that it is not true that it failed to develop a working embodiment of the Broadband Patents. (D.I. 464 at 4). Plaintiff contends that Defendants improperly focus on full commercialization of the product, which is not required for enablement. (*Id.* at 5).

Defendants counter that the parties dispute whether the prototype was a successful embodiment of the claimed invention and that there is a "mountain of evidence that the prototype did not work." (D.I. 502 at 20). Defendants also argue that even if the prototype did work, it was

6

not an embodiment of the claimed invention as it did not connect a packet network to the Public Switched Telephone Network ("PSTN"), as Plaintiff contends the invention does. (*Id.* at 21).

Plaintiff's development of a prototype for the Broadband Patents was referred to as JCS2000. (D.I. 503-1, Exh. 15 at 425-26 of 752). The JCS2000 project as a whole aimed to "integrate [Plaintiff's] voice and data networks onto the ATM infrastructure." (D.I. 505-1, Exh. 50 at 74-75 of 231). The intent of the project was to determine whether the Broadband Patents would work, by having a Call/Connection Management ("CCM") control an ATM Voice Multiplexer instead of a switch. (D.I. 503-1, Exh. 15 at 425-429 of 752). The "proof of concept" prototype was developed at Plaintiff's Advanced Technology Lab. (D.I. 505-1, Exh. 50 at 75 of 231; D.I. 465-1, Ex. 2 at 25 of 80).

The parties dispute whether the prototype worked and whether it embodied the disclosed invention.[7] Plaintiff cites to deposition testimony from fact witnesses who stated that the prototype worked. (D.I. 465-1, Exh. 2 at 25-27 of 80 (internal page numbering 135:4-144:11); Exh. 4 at 37-41 (internal page numbering 85:20-89:18); Exh. 5 at 46 of 80 (internal page numbering 76:2-7). Defendants have no evidence from which a reasonable fact finder could conclude that the prototype did not work. While Defendants cite testimony from a Cisco employee who stated that Plaintiff "had been unable to get [the prototype] completely working," (D.I. 504-1, Exh. 47 at 287-88 of 288 (internal page numbering 196:6-198:2)), that is inadmissible hearsay that cannot be considered in a motion for summary judgment. Defendants' only other evidence in support of its contention that the prototype did not work are Plaintiff's

---

[7] One difficulty with the "prototype" argument is that it is not always clear that the parties are talking about the same thing. There was a "proof of concept" prototype and there were at least two "production prototypes." (D.I. 465-1, Ex. 2 at 25 of 80). I think it is undisputed that the JCS2000 was "never actually deployed to commercial traffic." (*Id.*, Ex. 4 at 39 of 80; *see* D.I. 464 at 5). Commercial deployment is, however, irrelevant to enablement.

IRS documents describing "technical uncertainties" with the JCS2000. (D.I. 505-1, Exh. 49 at 13-16 of 231). A reasonable fact finder could not return a verdict of inequitable conduct regarding the Broadband Patents for Defendants based on this evidence.

Defendants, however, raise a genuine issue of material fact that the prototype did not embody the claimed invention. Using the '640 Patent as an example, the Broadband Patents' specification states, "The method comprises receiving the signaling for the call into the signaling processor, processing the signaling to select the virtual connection, generating new signaling to identify the particular connection and the selected virtual connection, and then transmitting the new signaling to the ATM interworking multiplexer." (D.I. 14, Exh. F at col. 2:17-22). In other words, the "Broadband Patents generally claim broadband communication systems relating to various broadband networking techniques for the bridging of calls between packet-based and non-packet-based communication networks." (D.I. 500-1, Exh. 1 at 33 of 1423). Defendants argue, and cite to evidence, that the "proof of concept" prototype was not connected to a packet network or to a PSTN (a non-packet based network), as was part of the disclosed invention. (D.I. 503-1, Exh. 15 at 426-29 of 752; D.I. 504-1, Exh. 42 at 219-20 of 288). While Plaintiff contends that the prototype embodied the invention (D.I. 464 at 4-6), Defendants' proffered evidence creates a genuine dispute of material fact as to whether Plaintiff's prototype actually did so.

Based on Defendants' evidence, a reasonable fact finder could find that the "proof of concept" prototype did not enable the invention disclosed in the Broadband Patents. There is no argument that some other work enabled the invention. (D.I. 524 at 4-5). As enablement is an issue material to patentability, it follows that a reasonable fact finder could find that a reasonable examiner would have considered information about the failure to make a working embodiment to

be material to patentability. Such issues of fact must be decided by the fact finder. Therefore, summary judgment of no inequitable conduct for the Broadband Patents is denied.

### C. Specific Intent to Deceive

Plaintiff argues that Defendants have not established specific intent as Defendants' allegations are based on purported inconsistent statements that have no record support and from which multiple reasonable inferences can be drawn. (D.I. 464 at 6). Plaintiff contends that Defendants have not met their burden of proving that intent to deceive is the single most reasonable inference to be drawn from the evidence. (*Id.* at 7).

Defendants argue that the Court should infer specific intent from the evidence presented, including Plaintiff's knowing and repeated misrepresentations about the existence of an ATM switch and Plaintiff's failure to disclose to the PTO that their prototype did not embody the claimed invention. (D.I. 502 at 23). Defendants contend that from this evidence, a reasonable fact finder could find that intent to deceive is the single most reasonable inference. (*Id.*).

For inequitable conduct, the intent to deceive must be "the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008). Granting summary judgment on inequitable conduct "is permissible, but uncommon," in light of the "inherently factual nature of the issue of intent." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006). As "[d]irect evidence of intent is rare, . . . a court must often infer intent from the surrounding circumstances." *Id.*

Drawing all inferences in favor of Defendants, a reasonable fact finder could find that the intent to deceive is the single most reasonable inference from the evidence presented. For the Call Control Patents, the parties dispute whether Plaintiff's employees had the intent to deceive

the PTO. (D.I. 464 at 7; D.I. 502 at 22). Plaintiff contends that it is a reasonable inference that their employees did not deliberately misrepresent the existence of ATM switches or intentionally disclose conflicting information to the PTO. (D.I. 464 at 7). Defendants, however, argue that the most reasonable inference of Plaintiff's repeated misrepresentations to the PTO is specific intent to deceive. (D.I. 502 at 22). Based on the evidence, a reasonable fact finder could find that Plaintiff's representations to the PTO were made with an intent to deceive.

A reasonable fact finder could also find that an intent to deceive was the most reasonable inference from Plaintiff's failure to disclose problems with the prototype for the Broadband Patents to the PTO. Defendants' evidence contains a description of the prototype and its functionality, including testimony that the prototype did not connect a packet-based and non-packet-based network. (D.I. 503-1, Exh. 15 at 426-29 of 752; D.I. 504-1, Exh. 42 at 219-20 of 288). From this evidence, a reasonable fact finder could find that Plaintiff's lack of disclosure to the PTO regarding the functionality of the prototype was done with an intent to deceive. There are disputes of material fact as to whether Plaintiff had specific intent to deceive and the determination of intent is "inherently factual." Thus, Plaintiff's motion for summary judgment is denied.

IV.     CONCLUSION

As there are genuine issues of material fact and a reasonable fact finder could find for Defendants, Plaintiff's motion for summary judgment of no inequitable conduct (D.I. 463; No. 18-361, D.I. 253; No. 18-362, D.I. 274; No. 18-363, D.I. 249) is denied.