IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY LP,<br>        Plaintiff,<br>                        v.<br><br>CHARTER COMMUNICATIONS, INC., et al.,<br>        Defendants. | C.A. No. 17-1734-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br>        Plaintiff,<br>                        v.<br><br>MEDIACOM COMMUNICATIONS CORP.,<br>        Defendant. | C.A. No. 17-1736-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br>        Plaintiff,<br>                        v.<br><br>WIDEOPENWEST, INC., et al.,<br>        Defendants. | C.A. No. 18-361-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br>        Plaintiff,<br>                        v.<br><br>ATLANTIC BROADBAND FINANCE, LLC, et al.,<br>        Defendants. | C.A. No. 18-362-RGA |
| SPRINT COMMUNICATIONS COMPANY LP,<br>        Plaintiff,<br>                        v.<br><br>GRANDE COMMUNICATIONS NETWORKS, LLC,<br>et al.,<br>        Defendants. | C.A. No. 18-363-RGA |

1

<u>MEMORANDUM OPINION</u>

Christina B. Vavala and Stephen J. Kraftschik, POLSINELLI PC, Wilmington, DE; Aaron E. Hankel, B. Trent Webb, John D. Garretson, Jonathan M. Hernandez, Jordan T. Bergsten, Lauren E. Douville, Lydia C. Raw, Mark D. Schafer, Ryan D. Dykal, and Ryan J. Schletzbaum, SHOOK, HARDY & BACON LLP, Kansas City, MO; Michael W. Gray and Robert H. Reckers, SHOOK, HARDY & BACON LLP, Houston, TX, attorneys for Plaintiff Sprint Communications Company LP.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER PA, Wilmington, DE; Alex Henriques, Robert A. Appleby, Ryan Kane, James E. Marina, Gregory Arovas, and Jeanne M. Heffernan, KIRKLAND & ELLIS LLP, New York, NY; Bao T. Nguyen, KIRKLAND & ELLIS LLP, San Francisco, CA; Gregory Polins, KIRKLAND & ELLIS LLP, Chicago, IL; Luke Dauchot, KIRKLAND & ELLIS, LLP, Los Angeles, CA; Daniel L. Reisner, David S. Benyacar, and Michael Block, ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY; Robert J. Katerberg, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC; Thomas T. Carmack, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, CA, attorneys for Defendants Charter Communications, Inc. et al.

Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Robinson Vu, Lindsay Volpenhein Cutié, Natalie Alfaro Gonzales, and Amy E. Bergeron, BAKER BOTTS LLP., Houston, TX; Timothy S. Durst, BAKER BOTTS LLP, Dallas, TX, attorneys for Defendants Mediacom Communications Corp., WideOpenWest Networks, Inc., Atlantic Broadband Finance, LLC, and Grande Communications Networks, LLC, et al.

March 16, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion to Strike Portions of Plaintiff's Expert Reports. (D.I. 476; No. 17-1736, D.I. 327; No. 18-361, D.I. 275; No. 18-362, D.I. 297; No. 18-363, D.I. 272). I have considered the parties' briefing. (D.I. 477, 527, 540).[1] The motion and briefing have been filed in five cases.

## I.    BACKGROUND

Plaintiff Sprint Communications alleges patent infringement against Defendants Charter Communications, Mediacom Communications,[2] WideOpenWest,[3] Atlantic Broadband Finance,[4] and Grande Communications Networks.[5] Plaintiff currently asserts that Defendants' Voice-over-IP ("VoIP") systems infringe nine[6] patents, which can be grouped into the Call Control Patents, the Broadband Patents, and the Enhanced Services Patent. The Call Control Patents are Nos. 6,452,932 ("the '932 Patent"), 6,463,052 ("the '052 Patent"), 6,633,561 ("the '3,561 Patent"), 7,286,561 ("the '6,561 Patent"), and 7,505,454 (the '454 Patent"). The Broadband Patents are Nos. 6,343,084 ("the '084 Patent"), 6,473,429 ("the '429 Patent"), and 6,298,064 ("the '064 Patent"). Patent No 6,697,340 ("the '340 Patent") is the Enhanced Services Patent.

Defendants move to strike about thirty-six paragraphs of Plaintiff's expert reports that Defendants contend do not satisfy Rule 26. (D.I. 476 at 1). Defendants argue that Plaintiff's expert reports incorporate by reference a significant amount of other expert reports, expert

---

[1] For efficiency, I will cite to the 17-1734 docket, unless otherwise specified.
[2] C.A. No. 17-1736.
[3] C.A. No. 18-361.
[4] C.A. No. 18-362.
[5] C.A. No. 18-363.
[6] Plaintiff asserted claims from eleven patents at the time of the briefing, but has since dismissed all claims of two of them.  (*See* D.I. 432 at 2; D.I. 493).  The reduction to nine patents has no impact on the analysis unless noted.

testimony, and jury verdicts from prior litigations, which incorporation fails to meet the requirements of Rule 26(a)(2)(B). (D.I. 477 at 1). The parties discussed these issues extensively before bringing the issue before the Court. (*See* D.I. 478-1, Exh. 1 (35-page email chain)).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to "contain…a complete statement of all opinions that the witness will express and the basis and reasons for them; [and] the facts or data considered by a witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26's disclosure requirement is intended to "prevent a party from being unfairly surprised by the presentation of new evidence." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016) (quoting *Alza Corp. v. Andrx Pharm., LLC*, 2008 WL 1886042, at *2 (D. Del. Apr. 28, 2008)).[7]

## III.     ANALYSIS

### A. Defendants' Motion to Strike Portions of Dr. Wicker's Reports

Defendants move to strike any paragraphs of the reports that fail Rule 26, and specifically ask the Court to strike from Dr. Stephen Wicker's reports: paragraph 181 of his expert report regarding infringement of U.S. Patent Nos. 6,452,932, 6,463,052, 6,633,561, 7,286,561, 7,505,454, 6,298,064, 6,343,084, 6,473,429, 7,327,728, 6,330,224, & 6,697,340, dated March 20, 2020 (errata dated May 11, 2020); paragraphs 4, 43, 51, 176, 267 of his April 24, 2020 rebuttal report in response to Dr. Kevin Almeroth, Dr. Michael Frendo, and Mr. Bradner; paragraphs 1, 83, 160, 406 of his April 24, 2020 rebuttal report in response to Zygmunt Haas; paragraphs 1, 70, 142, 291, 337, 351, 381, 474, 482, 543 of his April 24, 2020 rebuttal

---

[7] No party cites a case directly on point.  That is why this Memorandum Opinion does not further cite any cases on the main point of dispute.

report in response to Seamus B. Gilchrist; paragraphs 128, 138, 175 of his May 15, 2020 reply report in response to Dr. Almeroth; and paragraphs 228 and 247 of his May 15, 2020 reply report in response to Mr. Gilchrist. (D.I. 476 at 1-2).

Defendants move to strike Dr. Wicker's incorporation of his reports and testimony from prior litigations. (D.I. 477 at 8). Defendants contend that Dr. Wicker's reports in the instant action incorporate nine prior reports totaling over 3,351 pages and all his prior deposition and trial testimony, which amounts to at least eighteen days of testimony. (*Id.* at 3). Defendants argue that incorporation of such a significant amount of material fails to put Defendants on notice of which opinions Dr. Wicker will offer at trial and makes it "nearly impossible" for Defendants to determine whether Plaintiff is confining its expert testimony to opinions properly disclosed under Federal Rule of Civil Procedure 26(a)(2)(B). (*Id.* at 1-2, 8-9). Defendants assert that Dr. Wicker's incorporations do not sufficiently set forth the basis and reasons for Dr. Wicker's opinions in the present case. (*Id.* at 9).

Plaintiff counters that there is no unfair surprise, as either Plaintiff or Dr. Wicker has specified which portions of his prior reports will be used in this case. (D.I. 527 at 10). Further, Plaintiff argues that Dr. Wicker does not intend to offer opinions from prior cases if such opinions are irrelevant to the issues in this action. (*Id.*).

The parties conferred on these issues. (*See* D.I. 478-1, Exh. 1). The discussions resulted in some changes to Dr. Wicker's reports. For his March 20, 2020 expert report on infringement, Dr. Wicker submitted an errata on May 11, 2020 that eliminated citations to documents that had not been produced to Defendants. (*Id.*, Exh. 2 at 45 of 143). Plaintiff also clarified certain references in Dr. Wicker's April 24, 2020 rebuttal report in response to Dr. Kevin Almeroth, Dr. Michael Frendo, and Mr. Bradner, by specifying which portions of Dr. Wicker's prior reports he

was incorporating into that report. (*Id.*, Exh. 1 at 16 of 143). Defendants argue that this is still insufficient as Plaintiff's proposed narrowing for this report incorporates "vast swathes of his opinions expressed in other cases." (D.I. 540 at 2).

While Plaintiff has made some efforts to reduce the extensive incorporation of Dr. Wicker's reports by identifying, in certain paragraphs, which portions of the prior reports he is incorporating, that is not enough. Defendants are entitled to such specificity throughout all of Dr. Wicker's reports. In many paragraphs Defendants seek to strike, Dr. Wicker incorporates entire reports and testimony from prior litigation. For example, in Dr. Wicker's Rebuttal (i.e., Answering) Invalidity Report regarding Written Description, Enablement, and Related Technical Issues (D.I. 478-1, Ex. 5), one of six reports of Dr. Wicker that are subject to the instant motion, there are the following paragraphs to which Defendants object:

> I have previously provided opinions related to the validity of certain claims in Sprint's Asserted Patents under the written description and enablement requirements in 35 U.S.C. § 112. In particular, **my May 15, 2015 Rebuttal Report to Dr. Paul S. Min ("Kansas Invalidity"), July 11, 2016 Rebuttal Report to Dr. Paul S. Min and Henry Houh ("Cox Validity I"), and July 10, 2017 Rebuttal Report to Dr. Paul S. Min ("Cox Invalidity II"), contain opinions relevant to the written description and enablement requirements and the Sprint Asserted Patents, which I incorporate herein by reference**. In February and March 2017, **I also testified at a jury trial in the Sprint v. Time Warner Cable matter in the United States Court for the District of Kansas where I offered expert testimony as to the relevant technology and validity of certain claims in the Sprint Asserted Patents under the written description requirement. I incorporate herein by reference that testimony and the associated demonstrative exhibits I relied upon to explain my opinions to the jury.**

> In my Infringement Report, **as well as my Kansas Validity, Cox Validity I, and Cox Validity II reports,** I provided a detailed tutorial regarding relevant technological issues. [See, e.g., Infringement Report at in 21-162, 174-195.] Based on the descriptions provided by Dr. Almeroth and Dr. Frendo, I provide the below additional contextual discussions.

> I provided background information related to the Internet Protocol in my Infringement Report in this proceeding, **as well as my earlier reports in Kansas and Cox, each of which is incorporated herein by reference**.

I agree with the Federal Circuit's majority opinion holding the claims of the Broadband Patents were not invalid under the written description requirement. **I hereby incorporate by reference my prior opinions and trial testimony in the Time Warner Cable litigation.**

**As explained in my prior reports, including the Cox Validity Reports**, the Call Control Patent specifications are not limited to connection-oriented networks, but rather, the specification demonstrates that the inventors were in possession of inventions used to connect broadband networks to narrowband networks. As one example, and with reference to FIG. 2, the Call Control Patents disclose that network 210 could be narrowband, broadband, packet-based, or a hybrid.[3,561 Patent at 8:35-48.] As another example, with respect to the interconnection of a broadband network to a narrowband network, the Call Control Patents' describe a CCP used to "select the narrowband switches to process particular calls and the DSO ports on those switches that will accept these calls." ['3,561 Patent; 12:5-7.] The disclosure is not limited to a connection-based broadband network, but instead, discloses a CCP that selects an egress or ingress point for the broadband network. In an IP-based network, like an ATM based network, it is necessary to identify such an egress point from the broadband network before the communications path is established. Dr. Almeroth does not explain why a person of skill in the art would conclude that the selection of a narrowband switch and DSO connection would not apply when connecting an IP network to a narrowband network for transmitting voice.

(*Id.* at 58-62 (¶¶ 4, 43, 51, 176, 267) (emphasis added). To the extent the highlighted cross-references and incorporations by reference are supposed to represent a disclosure in compliance with Rule 26, I do not think they do. They are purposeful obfuscation (or, hiding the ball) of what the opinions are that Dr. Wicker intends to express at the trial in this case. The rule calls for the disclosure of "all opinions the witness will express," not all opinions the witness has or has ever had. The Rebuttal Report is in response to whatever it is that Defendants' experts have opined. Wholesale incorporation of opinions offered at different times in different cases, only some of which could possibly be relevant to the opinions Defendants' experts are offering in this case is not literally in compliance with the rules.[8] The practice is also inconsistent with the spirit

---

[8] It does not matter that Sprint says Dr. Wicker will only offer relevant opinions. It is, among other things, the inclusion of irrelevant opinions that makes the disclosure violative of the Rule.

of the Rule.  Nor is it somehow incumbent upon Defendants to use deposition time to ferret out what Dr. Wicker might actually intend to say in this case.

There is also a practical aspect to this.  In my experience, the second most common objection at patent trials is, "Objection, not disclosed in the expert's report."[9]  Dealing with this objection at a jury trial can be difficult even when the parties are operating in good faith, but it would be a nightmare when the universe of possible sources of a disclosure is as great as Plaintiff suggests it could be.

Thus, Defendants' motion to strike is granted as to Dr. Wicker's expert reports.

The parties dispute whether the motion to strike includes all the information in the stricken paragraphs or only the information that is relevant to the incorporation of prior opinions. (D.I. 527 at 19-20; D.I. 540 at 7-8). Limiting the motion to strike to the portions of the paragraphs that concern Dr. Wicker's incorporation of his prior reports and testimony will resolve Defendants' contentions.

The motion to strike is granted as to Dr. Wicker's incorporation by reference of his other reports and testimony in the identified paragraphs. While Defendants' motion to strike is granted, Plaintiff can supplement Dr. Wicker's reports with information from his previous reports and testimony that is germane to this litigation.  By "supplement," I mean Dr. Wicker can amend his reports (while keeping the original paragraph numbering and not changing the text except in the amending paragraphs) to add anything that occurred in other litigation that he will express in this trial and that he has not said elsewhere in his reports in this case.

### B.  Defendants' Motion to Strike Portions of Dr. Mangum's Reports

---

[9] I think the most common is, "Objection, leading."

Defendants move to strike paragraphs 234-35 and footnote 99 of Dr. Mangum's March 20, 2020 expert report for Defendant Charter (D.I. 478-1, Exh. 2); paragraphs 238-39 and footnote 452 of his March 20, 2020 expert report for Defendant Mediacom (and identical paragraphs in his opening reports for the other non-Charter Defendants) (D.I. 478-1, Exh. 11); paragraphs 27, 146, 179 of his May 15, 2020 reply report for Defendant Charter (D.I. 478-1, Exh. 9) ; and paragraph 105 and footnote 168 of his May 15, 2020 reply report for Defendant Mediacom (and identical paragraphs in his reply reports for the other non-Charter Defendants) (D.I. 478-1, Exh. 12). (*See* D.I. 476 at 1-2).

Defendants argue that Dr. Mangum's report does not comply with Rule 26, as his references to other expert opinions do not give Defendants notice of what Dr. Mangum will testify about. (D.I. 477 at 9). Further, Defendants contend that they will be denied the opportunity for effective cross examination if Dr. Mangum "intends to repeat opinions from people who have not been disclosed as experts in this case." (*Id.* at 10). Defendants have asked Plaintiff for confirmation that Dr. Mangum "will not use prior reports or prior testimony to either: a) add opinions that are not expressly reflected in his reports in this case; or b) support the opinions contained in his reports in this case." (*Id.* at 10). Plaintiff has not provided such confirmation. (*Id.*).

Plaintiff argues that Dr. Mangum references the other experts' reports in the context of one of the *Georgia-Pacific* factors, which is the "opinion testimony of other qualified experts." (D.I. 527 at 15). Plaintiff states that at Dr. Mangum's deposition, he testified that he was not taking other experts' opinions and using them as his own. (*Id.*). Plaintiff asserts that this should quell Defendants' concerns that Dr. Mangum will use other experts' opinions as his own. (*Id.*). Plaintiff contends that Defendants' arguments also fail as Federal Rule of Evidence 703 permits

an expert to rely on other experts to form an opinion, so long as an expert does not simply state other experts' opinions as his own. (*Id.* at 16).

All Defendants take issue with the following paragraphs in Dr. Mangum's March 20, 2020 Expert Report:

> I have considered the evidence presented to me in this matter, as well as considered the expert report of Dr. Wicker. In addition, as part of the evidence presented to me, I have seen prior expert reports from prior tracks of litigation. These prior expert reports were from Sprint as well as the defendant in the case.
>
> Of perhaps the closest comparison to my expert opinion and report in this matter, I considered the expert report of Dr. Rao in relation to Sprint's actions against Time Warner Cable, Comcast, Cox Communications, and Cable One. Dr. Rao did not choose to pursue the analytical approach or lost profits approach for those defendants based on the facts before him in that case. I believe that as a matter of economic principle that lost profits is an appropriate measure of damages and, if a reasonable royalty is nonetheless to be calculated, that the analytical approach to a royalty is an appropriate remedy given the circumstances of this case.

(D.I. 478-1, Exh. 3 at 49 of 143 (¶¶234-35[10])).

Defendant Mediacom and the other non-Charter Defendants move to strike footnote 452 from Dr. Mangum's March 20,2020 report in the Mediacom case (and the identical paragraphs in his reports in the other non-Charter Defendants' cases):

> These consist of reports from Mohan Rao, Christine Hammer, Christopher Bakewell, Julie Davis, Jonathan Putnam, Mark Hosfield, Gene Partlow, and Stephen Wicker. *See, e.g.*, SPRe-043-01-07079; SPRe-043-01-07162; SPRe-043-01-07887; SPRe-043-01-08764; SPRI4_02_00083981; SPRI4_02_00084605; SPRI4_02_00085743; SPRI4_02_00085826; SPRI4_02_00085928; SPRI4_02_00086014; SPRI4_02_00086320; SPRI4_02_00086484; SPRI4_02_00086666; SPRI4_02_00087601; SPRI4_02_00087905; SPRI4_02_00088128; SPRI4_02_00088182; SPRI4_02_00088305; SPRI4_02_00088568; SPRI4_02_00089412; SPRI4_02_00091012; SPRI4_02_00092205; SPRI4_02_00093309; SPRI4_02_00093558; SPRI4_02_00094086; SPRI4_02_00095120; SPRI4_02_00095120; SPRI4_02_00095127; SPRI4_02_00095134; SPRI4_02_00095173.

---

[10] Paragraphs 234-35 of Dr. Mangum's expert report for Defendant Charter are identical to paragraphs 238-39 of Dr. Mangum's March 2020 expert report for Defendant Mediacom. (D.I. 478-1, Exh. 4 at 3 at 49 of 143; Exh. 11 at 93-94, 113-14 of 143).

(D.I. 478-1, Exh. 11 at 109-110, 113 of 143 (n.452)). This footnote lists the expert reports that

Dr. Mangum considered in this case and which are referred to in paragraphs 234 and 235 above.

Defendants take issue with Paragraphs 234 and 235 and footnote 452 as they argue that Dr.

Mangum is incorporating other expert testimony into his own opinions. (D.I. 540 at 6-7).

I disagree. First, these paragraphs are in the section of Dr. Mangum's report that

discusses *Georgia-Pacific* factor 14, which is "the opinion and testimony of qualified experts."

(*Id.*, Exh. 3 at 49 of 143). Dr. Mangum is not reiterating the opinions of other experts. He simply

states that he has "seen" and "considered" the evidence in this matter, which includes expert

reports from prior litigations and those of Dr. Wicker in this case. Further, Plaintiff has

represented that Dr. Mangum's report is "not incorporating by reference prior reports as his own

opinions in this case." (*Id.*, Exh. 1 at 21 of 143). Dr. Magnum has also confirmed that he is

referring to the other experts' reports and not "inserting them into [his] opinion." (D.I. 528-1,

Exh. 13 at 4 of 4). That Dr. Mangum has "considered the evidence presented" to him and "seen

prior expert reports" are statements of fact.[11] This is not a basis for a motion to strike.  It does not

purport to be a disclosure of the opinions of these other experts.  That is not to say, of course,

that Dr. Mangum will be allowed to testify that he has reviewed numerous other opinions of

hired damages experts, but, if that is an issue, it can be addressed by other means, such as a

motion in limine, at a subsequent stage in this litigation.  Defendants' motion to strike

paragraphs 234-35 of Dr. Mangum's March 20, 2020 report (and the identical paragraphs in

reports for the other cases) and footnote 452 of the expert report for Defendant Mediacom (and

the identical footnote in reports for the other non-Charter Defendants) is denied.

---

[11] Indeed, disclosure of the "facts and data considered by the witness in forming" opinions is a
required disclosure.  Fed. R. Civ. P. 26(a) (2)(B)(ii).

The Charter Defendants also move to strike footnote 99 from Dr. Mangum's March 20, 2020 report:

> *See, e.g.*, *Sprint Communications Company L.P. v. Cable One, Inc.*, Memorandum and Order, pp. 1-2 and 7-9. The Court rejected Cable One's motion for summary judgment that Cable One did not jointly infringe any of the patent claims because some of the infringement steps were allegedly performed by Level 3 Communications. *See also* Expert Report of Dr. Wicker on Infringement in *Sprint v. Comcast*, 11-2684 (Consolidated Cases) (D. Kan), Apr. 3, 2015, at Exhibit Cable One Architecture (opining that Cable One infringes Sprint's patents); *id.* at pp. 81-82 (opining that "Licensed Interconnection Providers" are not available, acceptable non-infringing alternatives).

(D.I. 478-1, Exh. 3 at 48 of 143 (n.99)).

In Dr. Mangum's May 15, 2020 Expert Reply Report, all Defendants move to strike:

> On a related note, I disagree with the Mulhern Report's purported economic adjustment to Sprint's past royalties, which assumes that every verdict and royalty payment should be divided equally among the patents specifically at-issue in that case or agreement, and the individually calculated value of each such patent should be subtracted from a license in this case if that individual patent is not asserted here. This is inconsistent with established economic principles and with how Sprint and others in the VoIP industry have understood Sprint's patents and patents-in-suit. As an example, even before the *Sprint v. TWC* verdict, I understand that the evidence shows that Sprint executives relied upon the *Sprint v. Vonage* verdict to form an expectation that the cable companies would pay at least 5 percent of VoIP revenue for a license to Sprint's entire VoIP patent portfolio. This underscores that Sprint believed (and others in the industry understood) the Christie patents asserted by Sprint were blocking patents, such that if any of those patents were infringed then Sprint would be entitled to at least a reasonable royalty of around 5 percent of VoIP revenue, or $1.37 per subscriber per month, in exchange for a license to the Christie Patents. Likewise, in the *Sprint v. TWC* case, the jury specifically heard testimony from Dr. Rao about the blocking nature of Sprint's patents, and awarded Sprint the full amount it requested at the $1.37 per subscriber per month rate, which was calculated off of the *Vonage* verdict, even though there was not perfect overlap between the patents asserted at trial in the *Sprint v. Vonage* case and the *Sprint v. TWC* case. I understand that the jury in *Sprint v. TWC* also heard testimony from Dr. Rao that the $1.37 sought by Sprint in that case was further corroborated by the Voiceglo and Paetec licenses, each of which amounted to a royalty of around 5 percent to Sprint for Sprint's Christie Patent portfolio, even though Sprint only accused those companies of infringing select patents in that portfolio. I understand the Federal Circuit agreed that these two licenses corroborated the jury verdict in the *Sprint v. TWC* case. Finally, as discussed in my opening report, the *Metrocast* settlement recognized that Sprint was entitled to at least $1.37 per subscriber per month for a license to the entire Christie portfolio, even though Sprint only accused Metrocast of infringing certain patents from that portfolio.

(D.I. 478-1, Exh. 9 at 98-99 of 143 (¶ 146[12])).

       The Charter Defendants also move to strike from the same report:

> Based on my conversation with Dr. Wicker, I understand Ms. Mulhern's claim that there was non-infringing competition from third parties is factually incorrect. The Mulhern Report seems to infer from the lack of infringement claims against certain parties that those parties did not infringe the patents-in-suit. I understand that this is not correct as a matter of law. I understand that this Court has also rejected this very argument (and even excluded expert testimony on that basis). As explained in my opening report, Dr. Wicker explained in the Cable One case why Cable One's use of Level 3 as a wholesale provider infringed Sprint's patents, and I understand it is Dr. Wicker's opinion in this case that the use of any non-Sprint wholesale service provider would still infringe Sprint's patents. I also understand that no expert in this case has directly challenged that opinion or explained why the use of Level 3 or any other non-Sprint third-party wholesale service provider by Charter or Bright House would avoid infringement under Dr. Wicker's opinions.

> In the first such opinion I can identify, Dr. Almeroth claims, without any citation or explanation, that "Dr. Mangum credits the Asserted Patents (and Sprint) with 100% of any 'cost savings' of VoIP over traditional circuit-switched systems because he assumes the Asserted Patents are 'blocking patents.'" This is incorrect for several reasons.  First, I do not assume that the asserted patents are blocking patents, rather I rely on Dr. Wicker's opinion that there is no available, acceptable, non-infringing alternatives to the patents-in-suit, and I confirm where appropriate that from an economic standpoint that the alternatives identified by Defendants—including circuit-switched telephony and IP-IP peering arrangement—would be unacceptable from an economic standpoint. Second, I do not credit the patents-in-suit with 100 percent of cost savings, but rather apply the analytical approach for calculating the value of the patents-in-suit as described by the Federal Circuit. Third, in applying that analytical approach, I explain, for example, how the "apportionment impact" of "profits due to differential product features" of VoIP is "factored into the analysis," and why, consistent with the opinion of Dr. Rao that was affirmed by the Federal Circuit in the *Sprint v. TWC* case, it would be economically improper to subtract out the value of IP-IP calls.

(D.I. 478-1, Exh. 9 at 96-97, 100 of 143 (¶¶ 27, 179)). Defendants urge the Court to strike

footnote 99 from Dr. Mangum's March 20, 2020 report and paragraphs 27, 146, and 179 from

---

[12] Paragraph 146 of Dr. Mangum's reply report in the *Charter* case (No. 17-1734) is virtually the same as Paragraph 105 of his reply report in the *Mediacom* case (No. 17-1736) (and the other non-Charter Defendants' cases). (D.I. 478-1, Exh. 9 at 98-99 of 143; Exh. 12 at 124-25, 129-30 of 143). The only difference appears to be the names of the Defendants' respective experts.

Dr. Mangum's May 15, 2020 reply report, arguing that Dr. Mangum disclosed opinions from other experts in prior litigations, which does not satisfy Rule 26. (D.I. 477 at 9).

To the extent that Dr. Mangum's opinions rely on Dr. Wicker's opinions, and he discloses that he is doing that, it is permissible within the bounds of Rule 26. "It is perfectly reasonable for a finance and damages expert to adopt conclusions of other experts." *EMC Corp.*, 154 F. Supp. 3d at 115 (quoting *Formax, Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, 2014 WL 3057116, at *2 (E.D. Wis. July 7, 2014)). Here, Dr. Mangum referenced Dr. Wicker's opinions on infringement and blocking patents, which is reasonable for him to do. Dr. Mangum is not a technical expert, but he can rely on Dr. Wicker's technical opinions as foundation for his damages report. (*See* D.I. 478-1, Exh. 9 at 96-97, 100 of 143). Defendants will be able address the soundness of Dr. Wicker's and Dr. Mangum's opinions through cross examination and other trial testimony. Defendants' motion to strike footnote 99 in Dr. Mangum's March 20, 2020 report and paragraph 27 in Dr. Mangum's May 15, 2020 report is denied. And, to the extent that paragraph 179 relies on Dr. Wicker's opinions, the motion to strike is similarly denied.

Defendants' objections to paragraphs 146 and 179 concern Dr. Mangum's statements regarding Dr. Rao's testimony in *Sprint v. Time Warner Cable*. Both paragraphs discuss Dr. Rao's testimony in that litigation, specifically Dr. Rao's calculation of a reasonable royalty, which was calculated based on prior jury verdicts and settlement agreements. (*Id.* at 98-100 of 143). Dr. Mangum refers to Dr. Rao's testimony on blocking patents, licenses and reasonable royalties, and apportionment. (*See id.*). I do not read the quoted paragraphs as disclosing that Dr. Mangum is relying on Dr. Rao's testimony in the Time Warner Cable litigation for any of Dr. Mangum's opinions. If he were, I would strike them, as Dr. Mangum would simply be reiterating the conclusions of another expert who will not be testifying at trial and whose

13

underlying opinions are not described in Dr. Mangum's report.  Rule 26 would be violated.

Defendants' motion to strike paragraphs 146 and 179 is denied.

Defendants have also filed a *Daubert* motion to exclude portions of Dr. Mangum's expert

report and testimony for its reliance on prior jury verdicts and settlement agreements. (D.I. 467).

The Court is granting this motion and is excluding Dr. Mangum's expert report and testimony to

the extent that it relies on prior jury verdicts and settlement agreements. This ruling likely will

eliminate Dr. Mangum's use of Dr. Rao's opinions in his report and testimony.[13]

The non-Charter Defendants also move to strike footnote 168 of Dr. Mangum's May 15,

2020 Expert Reply Report for Defendant Mediacom (and the identical footnotes in Dr.

Mangum's reply reports for the other non-Charter Defendants):

> I also understand that the Federal Circuit affirmed Sprint's decision not to apportion IP-IP calls in the TWC case with Sprint. *See Sprint v Time Warner Cable*, 17-2247, Brief of Appellant, 2017 WL 5515391, at \*2 (Fed. Cir. Nov. 13, 2017); *Sprint v. Time Warner Cable*, 17-2247, Brief of Appellee, 2018 WL 1215305, at \*38 (Fed. Cir. Feb. 23, 2018); *Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 984 (Fed. Cir. 2019); *Time Warner Cable, Inc. v. Sprint Commc'ns Co., L.P.*, 140 S.Ct. 467 (Mem), 205 L.Ed.2 287 (2019).

(D.I. 478-1, Exh. 12 at 126, 131-32, 137 of 143 (n.168)). Again, this is a statement of fact, as Dr.

Mangum is stating his understanding of a prior Federal Circuit decision. This is not a basis for a

motion to strike and its admissibility is more appropriately raised in a motion in limine. And, like

the rest of Dr. Mangum's opinion, to the extent that this footnote relies on prior jury verdicts

and/or settlement agreements, it will be excluded under *Daubert*. Defendants' motion to strike

this footnote is denied.

## IV.    CONCLUSION

---

[13] To be clear, the issue here is whether Rule 26 was violated.  Based on other rulings I am making contemporaneously with this one, it should be understood that I am not here addressing the admissibility of anything in the reports, and, in particular, anything about other trials and litigations.

Defendants' motion to strike (D.I. 476; No. 17-1736, D.I. 327; No. 18-361, D.I. 275; No. 18-362, D.I. 297; No. 18-363, D.I. 272) is granted as to portions of Dr. Wicker's reports. Plaintiff can supplement Dr. Wicker's reports by specifying which of his other reports he is incorporating by reference into his reports in this case. As to Dr. Mangum's reports, the motion to strike is denied.